Martin, J.
delivered the opinion of the court. The plaintiff states, that the defendant, Vernon, sheriff of his parish, has illegally taken three of his slaves, on an execution issued in a cause, in which the defendant Fluke waS plaintiff, and one Howard, defendant. The answer, after a general denial, avers that the slaves property siezed as the property of Howard. *443 There was a verdict and judgment for the defendants, and the plaintiff appealed.
East'n District.
March, 1818.
The record is accompanied by a statement of facts, and the plaintiff and appellant has filed an assignment of errors.
The statement of facts apprises us, that at the trial, the plaintiff introduced five documents.
1. A bill of sale from Howard to the plaintiff, for twelve negroes, dated December 12th 1815, recorded February 8, 1816,
2. A deed for a tract of land on Pearl river, sold by Howard, to the plaintiff, dated December 13, 1815, and recorded 8th of February, 1816.
3. An agreement between Howard and the plaintiff, by which the latter employs the former as an overseer, on the plantation on Pearl river, for three years, and engages to put the above twelve slaves, under the direction of Howard.
4. A note of hand of Howard, to the plaintiff for $5000, of the 2d of March, 1812, payable September 1, 1815, with a receipt on the back, dated December 13, 1815, as part payment of lands and negroes.
5. A note of hand signed by and witnessed by R. Powers, in payment of the hire of one of the negroes, sold by Howard to the plaintiff.
*444 The consideration money, expressed in the bill of sale for the negroes, is $3500, and that in the deed for the land, 3000 dollars, and both sums are acknowledged to have been received, at or before be signing.
It was admitted by the defendants, that the three slaves seized by the sheriff, as stated in the petition, were part of those conveyed by Howard to the plaintiff.
Towers and Morgan, the subscribing witnesses to the bill of sale and toe deed, were the only witnesses examined by the plaintiff.
Powers deposed that the note of *** was given to the plaintiff, (whose agent, the witness has been since the purchase of the land and negroes) For the hire of one of the negroes, sold by Howard to the plaintiff, another of whom has been ever since hired by the witness, who has paid the hire to the plaintiff.
On the cross examination of this witness, the defendants’ counsel suggested fraud, between the plaintiff and Howard, and the witness added, he had been long acquainted with them, they are brothers-in-law-he saw no consideration money paid, nor ant delivery of negroes. Howard has often spoken to him of his, Howard’s debts, as being many and pressing, with out ever naming any of his creditors, none of whom are known to the deponent.
*445 Morgan saw no delivery of negroes-he wrote the indorsement, or receipt on the back of Howard's note to the plaintiff, for 5000 dollars, saw the latter sign it, and heard the former acknowledge, it was in part payment of the land and negroes, and saw the latter pay the balance of the consideration money to the former.
The defendants introduced two witnesses, Crane and Lawrence: Crane deposed that in the summer of 1817, Howard came to him to buy corn, but he refused to credit him. Howard came a second and third time, and told the witness it was not true that he, Howard, had conveyed away his property.
Lawrence deposed, that at the gathering of the crop of 1817, Howard told him he had sold his cotton at 30 dollars, and the rise of the market.
The defendants further proved, that at the time of the sale, the slaves were on the land sold by Howard to Highlander, where they have ever remained since, and still are, that Howard remains on the plantation, and has the direction of it and the slaves.
The present suit was instituted the 29th of May, 1817.
The plaintiff and apellant assigned for error, that "although the defendants do not alledge in *446 their answer, any fraud, or want of legal consideration in the deed of sale, of the negroes who are the objects of this suit, made to the plaintiff and appellant, they were nevertheless on the trial of the cause, permitted to suggest fraud in the said sale, and to endeavour to bring proof of the same-whereas, by the law of the land, no such suggestion or proof is admissible, unless the party, against whom it is to be made, has had due notice thereof in the pleadings, in order to be prepared to meet and answer, or disprove the same."
In examining the record, we find no suggestion of fraud, except in the statement of facts- this suggestion must therefore have been merely oral, and during the trial : it is not easy to discern, how time defendants could have suggested fraud in any other manner; the plaintiff had not stated in the pleadings, that he claimed the slaves, under a bill of sale from Howard, and the production of this document to the jury, was the first notice, which the defendants had of this circumstance. How can it then be imputed to them, that they did not alledge fraud in the pleadings? if in pursuance of this sudden allegation, any improper evidence was offered, it was the duty of the plaintiff's counsel, to oppose its introduction, which does *447 pear to have been done. Besides as all the evidence came up with the record, this court is enabled to take a complete view and decide on the merits of the case; we are therefore of opinion, that this assignment of error cannot avail the plaintiff and appellant.
He avers, that the defendants have wrongfully seized his negroes, on an execution issued in a suit, to which he was not a party-they reply, that the facts as alledged are untrue, and the negroes were properly seized as the property of the defendant, in the execution.
The statement of facts admits the seizure-so that the real question is, whether the slaves were the property of the plaintiff?
These slaves, both parties admit were the property of Howard, and the plaintiff shews, that in December 1815, he bought them, by an instrument under the private signature of the vendor; which in February 1816, he caused to be recorded. The two subscribing witnesses to this instrument prove it, and one of them deposes to the consideration money.
Is this sale a fraudulent one? The circumstances, from which the defendants contend that it is, are-
That Powers heard Howard say, he had many and pressing debts-Crane heard him say, *448 years after the sale, and months after the institution of this suit, that it was not true he had conveyed away his property, and he told Lawrence he had sold his cotton crop; can these assertions of Howard, out of the plaintiff's hearing, affect the solemn act and deed, under which Howard conveyed his property to him? We think not.
The absence of a delivery is argued as a badge of fraud. The defendants' witnesses prove that the negroes sold have ever remained on the land, and Howard has always continued to have the direction of them.
The plaintiff has proven that he has hired two of these slaves, and that Howard is his overseer-that in February 1816, fifteen months before the institution of the present suit, he employed Howard as his overseer, and that their articles of agreement, were executed before the judge of their parish; that by this agreement, which took place within less than two months after the purchase, Howard is to manage the plantation and negroes for the plaintiff, during the space of three years, which were not elapsed at the time of the seizure, and have yet several months to run. Violent, however, as is thought to be the presumption of fraud, arising from the near relationship, in which the *449 plaintiff and Howard stand, and from his remaining in possession of the negroes after the sale, it must vanish or at least be immensely weakened when we reflect, that there is no evidence, which the court may listen to, of Howard being at all in debt, at the time of the sale to the plaintiff. It is true witnesses say they heard Howard talk of his many and pressing debts; but this is no evidence against Howard, who is not a party to the present suit, and who had no opportunity to cross-examine. It is not evidence against the plaintiff, because it is the report of the conversation of a third person, in the absence of the plaintiff. The sale took place fifteen months before the seizure of the slaves, under the execution of Fluke, a period too long to authorize us to conclude, that Fluke's cause of action then existed. For any thing that appears on the record, Howard did not own one single cent, on the day of the sale of the negroes seized. If he was not in debt, there was no person to be defrauded-fraud cannot exist.
But, the absence of a delivery, if not a presumption and even evidence of fraud, prevents the vesting of the property sold, in the vendee.
There is not a truer principle than this, and it has been made the basis of the decision of *450 this court, in the case of Durnford's syndics vs. Brooks, 3 Martin 322, and Mumford vs. Norris, 4 id. 20. But in the present case, there has been a delivery : where, by the contract of sale, the vendee lets to the vendor the premises, the lease is equivalent to a delivery: for the vendor holding no longer the premises as owner, but as lessee, he ceases, and the vendee begins to possess it: nam possidemus per colonos & inquilinos nostros. L. 25, § 1. ff. de regulis juris. Here, the agreement executed by the parties, vendor and vendee, in presence of the parish judge, a few days after the sale, that the vendor should manage the plantation and ne-groes sold, as overseer of the plaintiff, and his consequent occupation of the premises accordingly, is a holding of possession for the ven-dee-the vendor, therefore, acknowledges he is to oversee the plantation and negroes for the vendee, for a fixed salary. His possession is that of his employer. This possession began on the 8th of February, 1816, the very day on which, by recording his private instrument of sale, the plaintiff gave it effect, against third parties. We are of opinion, that his title became, on that day, complete and perfect against third persons, and that the slaves seized, were wrongfully seized as the property of Howard.
Workman for the plaintiff, Harper for the defendant.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and proceeding to give such a judgment, as ought to have been given below, it is ordered, adjudged and decreed, that the injunction heretofore granted by the district judge, be made perpetual, that the defendants deliver the negroes Fanny, Billy and Manuel to the petitioner, and as we are without any evidence of the amount of the injury sustained by the plaintiff, that he recover nominal damages, viz. one dollar for the unlawful taking and detention, with costs of suit.