## HEIRS OF McVOY v. HALLETT AND WALKER.

1. Under the Spanish law in force in a portion of this State previous to its acquisition from France, the husband could make a valid sale of the paraphernal estate of the wife with her consent, and her joining in the deed is evidence of such consent, although that is not executed with the formalities required to a public act. The deed is binding on the parties and their heirs as a private act.

2. One effect of extending the laws of the Mississippi territory over the country so acquired was, to introduce the common law mode of proving deeds, by proving the signatures of subscribing witnesses where the gran-

tor is dead—as well as allow the probate and registration of deeds previously executed under the statute laws then in force.

Writ of Error to the Court of Chancery for the first district.

THIS bill was filed by Mrs. McVoy, in March, 1843, and after her death was revived by her heirs, against the executors and devisees of Joshua Kennedy. The case made by the bill is this, to wit:

At the the time of her intermarriage with D. McVoy, in the year 1807, Mrs. McVoy was the widow of one McCarton, who in his lifetime was seized in fee of the lands in controversy, these having been conceded to him by the Governor and Intendant of Louisiana, in August, 1787, and afterwards confirmed, in 1810, to Mrs. McVoy as his devisee, under his last will, in due form of law. In June, 1810, McVoy conveyed the lands to Kennedy by deed, which also purports to be signed by Mrs. McVoy, as a markswoman, but which she insists was never signed by her, nor did she ever execute any deed in legal form, and binding on her according to the laws in force. This deed, which is exhibited, is in the usual form of a conveyance, but contains this stipulation, to wit: "And we further agree, that this deed not being signed and executed before the commandant of Mobile, according to the laws of Spain, shall not invalidate the same, and that it shall be good and valid in law.

Under color of this conveyance, Kennedy, soon after its execution, took possession of the lands, and held them until his death, which occurred in December, 1838, and his executors have had possession since that time to the filing of the bill.

Kennedy, in his lifetime obtained a patent for the lands from the United States, as the assignee of Mrs. McVoy.

The prayer of the bill is, that the defendants may be decreed to convey to the complainant such parts of the lands as remain unsold by Kennedy, for an account of such as have been sold, as well as the profits, &c.

109

The answer of the defendants admits the seisin of McCarton—his marriage with the complainant—his devise to her of the lands in controversy—his death, and her subsequent intermarriage with McVoy.

They insist, that in June, 1810, Kennedy received two conveyances from McVoy, and the complainant, his wife, both executed by them, and duly delivered to Kennedy, by which all their right to the lands was transferred to him. They also insist, that Kennedy, under the act of 1812, presented his claim to the commissioners of the United States, produced his title papers and made his proofs. And the United States, by act of May 8th, 1822, confirmed his claim to him personally, and not in trust for the complainant or any other person. Neither the said complainant nor McVoy, her husband, making any claim to the said lands before the commissioners, and the said Kennedy having remained more than thirty years in possession of the lands.

They also plead the general statute of limitations, and the special act of 13th December, 1816, in bar of the complainant's claim.

The proof shows, that both the subscribing witnesses, as the grantors in the deed are dead, and the hand-writing of Mrs. McVoy, who executed it by a mark. In addition to this, there is the probate of the deed, by one of the subscribing witnesses, made on the first September, 1814, before one of the justices of the quorum of Mobile county. The proof is also full as to the possession of Kennedy, under the deed, since 1810, as well of his exhibition of his claim for the lands, to the commissioners, under the act of Congress of 1812, confirmation of this claim, as derived through a permission of the Spanish authorities for McCarton to settle the lands, and a quit claim patent from the United States, in pursuance of this confirmation.

The chancellor considering the case as clear for the defendants on every point raised by their answer, dismissed the bill.

This decree is now assigned as error.

A. F. HOPKINS, and J. F. ADAMS, for the plaintiffs in error, contended—

1. That the land belonging to the wife, McVoy, the husband, had no authority by sale to divest her title, and she was incapable of conveying it in any other mode than prescribed by 58 Law Partidas, 3 Tit. 18.; 1 Vol. Part. 218; 11 Teatis de la Legislation, &c. 275.

2. But the deed is not even valid as to McVoy, as the sale was not executed by a notary, and signed by two other notaries, or three respectable persons as witnesses. [1 Partidas, 225, 233 to 235.] The validity of a deed executed before witnesses, endures, even if valid, only during the lifetime of the witnesses. [1 Partidas, 232.]

3. But according to the regulations of the colony of Lousiana, no sale was valid without the written consent of the commandant, [1 White New Rec. 719, 720; 2 Ib. 236; 2 White Comp. 695; 1 Ib. 719,] and it cannot be disputed that the *lex fori* is to govern. [Towns v. Bardwell, 1 S. & P. 36; Crawford v. Childers, 1 Ala. R. 483; Brown v. Brown, 5 Ib. 508; Goodman v. Munks, 8 Porter, 84; Doyle v. Boter, 7 Ala. Rep. 246.]

3. It has been held, that the statute prohibiting suits against administrators for six months after the grant of administration suspends for that time the statute of limitations. [Hutchinson v. Tolls, 2 Por. 44; Houpt v. Shields, 3 Ib. 248.] In like manner the change of dominion over Mobile, and the surrender of the country subsequent to the commencement of the prescription suspends it as to a *feme covert* against whom the statute of limitations of the new sovereignty did not run. [Sledge v. Clopton, 6 Ala. Rep. 589; 5 Ib. 660.]

4. It is the equitable title of Mrs. McVoy derived from McCarton, which Kennedy procured to be confirmed, and therefore the confirmation inures to her, the more especially as she was under disability when the title was confirmed. [Kennedy v. Kennedy, 2 Ala. Rep. 571; Mason v. Watts, 6 Cranch, 148; Bodley v. Taylor, 5 Ib. 191; Robinson v. Campbell, 3 Wheat. 212.]

G. N. Stewart, and J. A. Campbell, for the defendants in error, argued—

1. From the case made by the bill, it appears the com-

plainants have a legal title, and there is no impediment to a recovery at law. The bill therefore has no equity.

2. The land in controversy was paraphernal estate of Mrs. McVoy, and by the civil law in force at Mobile, when the sale was made, it was competent for the husband and wife to convey it. [4 Martin, N. S. 404; 8 Ib. 288; Hawes v. Bryan, 10 Louis, 136; Fowler v. Boyd, 12, Ib. 70.] There is a distinction between *dotal* and *paraphernal* estates.— [Louis' Code, art. 2314, 2315; 6 Martin, 14.] The husband and wife may alienate the one, but perhaps cannot disturb the other. [8 Touilliere, tit. 8, § 3, 51, 52, 53, 60, 103, 164, 165, 166, 171, 179.]

3. There is no specific allegation of *coverture* in the bill, and no avoidance of the statute of limitations by any statement to bring the complainant within the exceptions of the statute. Supposing, however, that the fact of an existing coverture, from 1810 to 1841, can be collected from the bill, still there is no proof that such was the case, and such proof is essential. [Maury v. Mason, 8 Porter, 211-15; Dig. 327, § 83; 328, § 87.]

4. But under the Spanish law, prescription was against a married woman, during her coverture, in cases like this.— [2 Louis. 360.]

5. The claim of Mrs. McVoy, was never presented for confirmation, and is barred by the provisions of the act of Congress of 1812. [See 1 Land Laws, 606, § 4; Strother v. Lucas, 12 Peters, 410.]

6. This suit is also barred by our statute of 1816, (Dig. 328, § 87,) as the claim of Mrs. McVoy was never presented to the United States commissioners, as required to be done by that act.

HOPKINS, in reply argued—

1. That the complainant alledges in her bill the facts which show her to be within the exceptions of the statute, and therefore it was necessary for the defendants to deny these in their answer. [Story's Eq. Pl. § 680; 3 M. & C. 475; Mitford, 289, 241, 298; 6 Vesey, 594; 11 Pick. 331.] Every plea is understood to admit, for the purpose of trying

Heirs of McVoy v. Hallett & Walker.

the validity of the plea, all the facts of the bill, which are not traversed. [Mitford, 242 ; Cooper, 231 ; 3 Atk. 241.]

2. Proscription, or the statute of limitations, is governed by the *lex fori*, and if personal property is moved from one *forum* where the statute had commenced to run into another, where there was no statute, or one different, the parties would be controlled by the law of the place where the suit was instituted ; it follows therefore, that when Mobile passed to the dominion of the United States, the land ceased to be governed by the proscription laws of Spain or France, and was controlled by the local law—no title by prescription having been acquired by the foreign law. [7 Martin, N. S. 108.]

GOLDTHWAITE, J.—1. The conclusion to which the court has arrived in this cause, will render it unimportant to consider any but one of the positions assumed by the complainants. We think the deed executed by Mrs. McVoy, in 1810, is sufficient to transfer her estate in the land to Kennedy. It is conceded by the counsel on each side, that this was *paraphernal* property, as distinguished from *dotal*. It is said by Domat, that property is paraphernal which the wife gives not to the dotal estate—whether she expresses what she reserves, or specifies that to which she directs this title to be given. All that remains is paraphernal. [Domat des dots Tit. 9, § 4.] And it is the same when there is no constitution of any dower estate. [Hannie v. Browdon, 6 Martin, 14.] It is also said by Domat, that the difference between dotal and paraphernal estates consists in this—that whilst the revenues of that which is dotal go to the husband, those of the paraphernal remain with the wife, and she can dispose of them as well as of the principal estate itself, without authority from her husband. This we apprehend, continued to be the law of Louisiana until changed by the adoption of their civil code, which it seems prohibits an alienation by the wife of her paraphernal estate, without the husband's consent. [12 Martin, 242.] We need not however advert to this matter, as here the consent of the husband is certainly given—if the deed is to be considered as the act of the wife ; and it seems equally certain, the consent of the wife is to be

inferred from her joining in the conveyance, if the deed should be taken as the act of the husband. The questions to be considered are, whether the husband alone, or jointly with his wife, has legally conveyed her title by the deed exhibited, and if so, whether the deed itself is properly established by the proof.

In questions of this nature, although the decisions of our sister State of Louisiana, may not be conclusive authority of what the laws of Spain were at the date of the deed, yet they certainly are entitled to the utmost respect, and would incline a scale otherwise doubtful. We may concede that the citations from the Partidas and other works, leave it doubtful if effect would be given to the mere act of the wife, in executing a deed, or act of sale, deficient in the legal formalities, but the case at bar is not of that nature. It is the private act of the husband and wife together, and in this view seems precisely the same as one sustained under very similar circumstances in O'Conner v. Bane, 3 Martin, 446. There the title to the land in controversy, by the death of its former owner, vested in his widow, and four children, in 1782. The widow having intermarried again, joined her husband in the execution of an informal act of sale. The children brought suit for the land in 1814, and the presumption arising from its being for the whole of the land, is, their mother was then dead, though this fact does not appear in the statement of the case. The court held, that one half of the land was paraphernal estate of the wife, and that its alienation by the husband, with the consent of the wife, was a lawful act, and the instrument of sale, though defective in form as a public act, was good as a private one, and binding on the parties and their heirs. This case is conclusive as to the effect of the deed, and it only requires to be ascertained if that is sufficiently proved.

2. We are not informed what the Spanish law is with reference to the proof of a private act, verified by a mark only, instead of the written name of the grantor, nor is it in this case material that we should be. It is obvious the effect, or validity of a deed is quite different from the proof by which its execution may be made manifest. It must be valid or in-

Heirs of McVoy v. Hallett & Walker.

valid when it passes from the hand of its grantor, but that it did so pass, may be established by such evidence as the law making power shall from time to time direct, whenever the mode of attestation, or proof, does not of itself enter into the validity of the act.   Thus it may be possible, though we should greatly incline to doubt it, the signature of a markswoman, or man, may not by the Spanish law be proveable, after her or his death, except by living witnesses, but if this be so, it does not derogate from the authority of our legislature, in assuming the jurisdiction over whatever was Spanish domain, to provide a remedy for so apparent an evil.   This was done, in effect, by our common, as well as our statute law.   The first permits the proof of the signatures of subscribing witnesses, when they are dead, as the only mode at the command of those on whom it devolves.   The last provides that deeds may be admitted to registration when proved in a  particular form by the witnesses or any one of them, and that the probate thus authorized, shall establish the deed at any future period.   It appears the defendants were prepared with both these modes of proof, and we are entirely satisfied either was sufficient as one of the consequences of extending the laws of the territory of Mississippi, over the then  recently acquired territory, was to introduce the common law mode of proving deeds, as well as to warrant their probate and registration, independent of any actual litigation.

The result of our judgment is, the affirmance of that of the chancellor.

Decree affirmed.