Western Dist.
October, 1839.

scott's execu-
trix
vs.
gorton's ex-
ecutor.

## SCOTT'S EXECUTRIX *vs.* GORTON'S EXECUTOR.

### ON A REHEARING.

Executors as well as curators, tutors and other mandatories, are prohibited from purchasing part of the succession administered by them on pain of nullity, at a sale of property to pay the debts of the succession.

The nullity resulting from a prohibited sale to executors of property of the succession administered by them, *is absolute.* No subsequent ratification can give it effect against third persons, interested, who are not parties to the ratification.

WESTERN DIST.
October, 1839.

SCOTT'S EXECU-
TRIX
vs.
GORTON'S EX-
ECUTOR.

The ratification of an absolute nullity, can have no retroactive effect, but is a new title ; and cannot prejudice the rights of third parties previously acquired, whilst a relative nullity relates to the original act.

In this case a rehearing was applied for and obtained.

*Elgee*, for the plaintiff, argued against the first decision pronounced by the court, and submitted the following points:

1. Purchases at the sale of an estate, by the administrator or curator of the same, are not *absolutely null* and *void* in themselves ; the furthest that courts have ever gone, or, perhaps, *can go*, is to pronounce them *voidable*, and this, only when injury be complained of by the heirs or creditors. There is, indeed, no law that I can find, which prohibits *executors* from purchasing. Article 1139, Civil Code, is exclusively confined to curators of vacant successions, or of absent heirs. And article 1784, Civil Code, which is relied upon by the court, only pronounces the incapacity of an administrator to purchase, as a *relative*, not an absolute one. Thus, although an auctioneer is prohibited by positive laws, (and with great force and justice too,) from adjudicating property to himself, at his own sale, yet this court decided, in the case of Scott *vs.* Calvit *et al.*, 2 Louisiana Reports, 69, that it was only a *relative nullity*, which could be taken advantage of, by the heirs or creditors; in case they showed themselves aggrieved. In the absence, therefore, of all *absolute* prohibitory laws, this court will surely infer none. On the doctrine of absolute and relative nullities, I refer the court to 4 *Toullier, No. 553. Dunod, Traité de Prescriptions, part* 1, *chapter* 8, *page* 47. *Merlin's Repertoire, verbo Nullité, sections* 2 *and* 3.

2. Gorton cannot take any advantage of the relative nullity of the purchase made by the agent of the executrix, at the second sale, if, indeed, there be any, which is by no means admitted, unless he were an heir or creditor of Scott's estate, neither of which is pretended ; and *then* only in case he could show an injury.

So far from this being the case, it can be seen at once,

WESTERN DIST.

*October*, 1839.

SCOTT'S EXECU-
TRIX
*vs.*
GORTON'S EX-
ECUTOR.

that Gorton was *benefited*, absolutely, by the purchase having been made by agent, he being the *last* and *highest* bidder. Will this court then permit Gorton to come into court, and shield himself from paying a just debt, by contending that he would have been bound, had the property been adjudicated to A. B., who only offered five hundred dollars for it, but that he will not pay ; or the property being adjudged to C. D. for six hundred dollars, because, *perhaps*, the sale to C. D. may be voidable, although the adjudication to C. D. be a *positive advantage* of one hundred dollars to Gorton.

3. The sale of the property of Scott's estate, of which the negroes, which were adjudicated to the agent of the executrix, formed a part, was not a sale, made by the authority, or at the request of the executrix ; on the contrary, the decree clearly shows that it was a *licitation* made at the instance of a *co-heir to effect a partition between the widow in community,* (the present plaintiff,) *and the heirs.*

The *time*, the *place*, the *mode*, and the *terms* of the sale, were prescribed by a *family meeting*, without any intervention whatsoever of the executrix, who was also the widow in community. The *rationale* of the laws then, which prohibits an administration from purchasing at the sale of the effects of the estate which he administers on, cannot apply here, which I take to be, that it is to prevent any loss or injury to the estate by the administrator's having the control of the manner, time, place, and terms of the sale. The sale in this case was made contradictorily with the co-heirs and co-proprietors.

4. In all suits for a partition, where a sale takes place, nothing in the laws prohibits co-proprietors from purchasing at the sale, although, as is almost universally the case, the sale be provoked by one of them. On the contrary, we find that by articles 1265 and 2603 of the Civil Code, heirs may purchase at the sale of the hereditary effects, to the amount of their shares, if they choose; and even this privilege is, with certain restrictions, extended to minor co-heirs, by article 1266 of the Civil Code.

5. A wise, beneficent, and most just provision of law, has

WESTERN DIST.
October, 1839.

SCOTT'S EXECU-
TRIX
*vs.*
GORTON'S EX-
ECUTOR.

declared that the *heir* shall have the *preference* over all others in an administration of an estate. See Louisiana Code, article 1035. The policy of the law giver is evident. He justly presumes, that he who has the highest interests in an estate, will take the best care of it. Shall it then be said, that whilst the law *invites* the *heir* to administer, and holds out the offer of it to him, as a special favor, and as his peculiar privilege, will yet, at the same time, if he does accept it, take from him the high privilege which, by article 2420, is extended to all persons, to buy and sell what they think proper, unless *specially interdicted;* and moreover *nullify* the absolute provisions of the 1265th and 2603d articles of the Code, which expressly grants him the privilege of purchasing? How much stronger is the case before the court.

The plaintiff was the widow in community of the late T. C. Scott, possessing in her own right absolutely *one half* of the estate; her husband, by his will, makes her his executrix, an office which the courts may well presume is only bestowed upon those in whom the testator places the highest confidence. Will this court then say, " it is true you have the best, nay, the highest rights, *to the management of this* estate. You already are owner of one-half, and, therefore, we may justly presume that self interest will prompt you to take the best care of the balance; yet, if you do accept it, you must, and will forfeit all those rights, which the law has given to heirs and co-proprietors, to purchase the portion of that property which you already are the owner of one-half of." What more natural thing is it, than for a husband to make his wife his executrix, or for the wife to make her husband her executor; and yet, if they do accept the office, will this court impose disabilities upon them, which the law giver certainly has not? It may happen that I am partner in community with a deceased wife, whose executor I also am. An heir of my wife's, *provokes* a sale of the community property. It is indivisible by nature; I am compelled to consent. There exists amongst the property to be sold, some faithful and valuable slaves, which I have a peculiar wish to obtain. They are offered for sale. Not one-half is

WESTERN DIST.
*October*, 1839.

SCOTT'S EXECU-
TRIX
*vs.*
GORTON'S EX-
ECUTOR.

bid for them that I would be willing to give, yet, according to the decision of this court, I must quietly stand by, with folded arms, and see my own property sacrificed ; my house and my domestics pass away into strangers' hands, because my wife has unfortunately made me the victim of her confidence, by naming me as her executor. I cannot, (no matter at how low a sum the property be offered,) even *bid* for it, since he who has not the capacity to purchase, cannot legally make an offer.

6. The decision of the court appears to be based upon the grounds, that the executrix is the *seller*; that, therefore, if she buy, there is not that *aggregatio mentium*, which is essential to a contract of sale. I contend that, in this case, the executrix was not the vendor, at least solely and entirely. The record, page 14, as I have before stated, shows that the *price* to be given, the *thing* to be sold, and the *terms* and *conditions* upon which the same should be offered, were *decided* upon and ordered by a *family meeting*, at the provocation of one of the co-heirs. The question then arises, who is to be considered the seller ? I answer, that the partner in community and the heirs, being joint owners of the whole, were, and alone could be properly considered as the vendors, through the medium of their agent, or intermediary, the court. Let us suppose an estate, on which no person has administered, the effects of which are the common property of the heirs. One of the co-heirs forces a sale, to effect a partition. Which of the heirs is the seller ? If there be one on whom that character will rest, he cannot buy, according to the decision of the court, whilst there is positive law to the contrary.

7. Does the addition of the duties of an executor impair the legal rights of the co-heir or co-proprietor to purchase at the sale of the estate ? Assuredly not. Let us see what are those duties. We find by article 1653, that they are purely conservatory and ministerial. "He is bound to see the provisions of the testament faithfully executed ;" beyond this, his powers do not extend. There is, then, nothing here to prohibit him from purchasing at an open sale of the testa-

HARVARD SCHOOL LIBRARY

WESTERN DIST.
October, 1839.

SCOTT'S EXECU-
TRIX
vs.
GORTON'S EX-
ECUTOR.

tor's property ; more especially if that property be held in common between them. The similitude between the duties of an executor, and those of an administrator, can be no further extended than they are by articles 1139 and 1663. In the absence, then, of all absolute prohibitory statutes, this court will surely not deprive the citizen of one of his highest privileges, by abstract deductions. Again, it has been the settled and well-established practice here, for the last twenty years, for partners in community, to purchase at the sale of the common property, although, as is almost always the case, the survivor be the administrator of the deceased. Hundreds of thousands of dollars worth of property has been bought and sold in this way ; and even in the case before the court, the title to a large and valuable property is endangered by its decision. *Expedit Reipublicæ ut sit finis litium.* Should, however, the court still, in this case, maintain their original opinion, the door is thrown open wide for endless litigation. Upon the whole, I take it to be, that if the purchase made by the agent be null, as being the husband of the executrix, and partner in community, it can only be relatively so ; and if so, that none but heirs, or creditors who are aggrieved, could take advantage of it ; that Gorton is not in either of these predicaments ; and if he were, the adjudication to her husband, so far from working an injury, was, on the contrary, fraught with a *positive* and *direct benefit* to him, as, by his giving the *last* and *highest price* for the negroes, at the second sale, it lessened the amount which Gorton was responsible for under the 2589th article of the Code.

8. I take it, that, from a fair interpretation of article 1669, the functions of an executor, as such, cease upon the heirs coming in and taking possession of the estate, which was the case in Scott's estate, as may be inferred from the proceedings.

From the foregoing, the following corollaries may be deduced :

1st. The rules applicable to the government, and those establishing the rights, duties, and responsibilities of an

executor, are only the same with those of a curator of a vacant succession of an administrator, so far as identified by the Louisiana Code, articles 1139 and 1663 ; *inclusio unius est exclusio alterius.*

2d. All persons are capable of contracting, except those specially excepted by law. *Idem.,* 1775.

3d. An executor is not inhibited by law from purchasing property at a public sale of the estate of which he is executor.

4th. Courts are not at liberty to create incapacities even by analogies.

5th. If the sale was null, it was only a *relative* one. *Idem.,* 1784, 1788.

6th. Acts in contravention of mere prohibitory laws, are *relative nullities, not void,* but *voidable.*

7th. Such acts can only be attacked by the parties to them.

8th. Before a court can pronounce an act an absolute nullity, it is necessary, not only that the law should prohibit it, but declare it absolutely null.

9th. Where a partition is provoked by a co-heir, by means of a judicial proceeding or licitation, the court is the intermediate agent and seller.

10th. A licitation is not a sale, but a mode of partition, one of the effects of the action *communi dividendo* ; it is, in a word, the complement of partition. See *Merlin verbo Licitation. Pothier, Contrat de Vente, Nos.* 630, 637, 638.

All of which is respectfully submitted.

*Hyams,* argued in reply, on behalf of the defendant.

*Strawbridge, J.,* delivered the opinion of the court.

At a former term, this cause having been heard, and judgment rendered for the defendant, a rehearing was granted, and it has again been argued before us.

Gorton, the defendant, having purchased a female slave and child at a probate sale of a succession administered by the plaintiff, refused to carry into effect the adjudication, on the ground of some supposed or real redhibitory vice.

WESTERN DIST.
October, 1839.

SCOTT'S EXECU-
TRIX
vs.
GORTON'S EX-
ECUTOR.

WESTERN DIST
October, 1839.

SCOTT'S EXECU-
TRIX
vs.
GORTON'S EX-
ECUTOR.

A second sale was made at the risk of the first purchaser, at which the slave was struck off to the plaintiff for a smaller price, and this suit was brought to recover the difference between the two sales, (some six or seven hundred dollars,) with damages.

The former judgment of this court was adverse to these claims, for the reason that the second sale was void, the executrix being incapable of purchasing.

The rehearing was granted on the allegation that the sale was made in a suit in partition, provoked by some of the heirs, the present plaintiff, one of the co-proprietors being a defendant therein, and capable of purchasing at a sale made with a view to partition.

Had this view of the case been supported by the testimony, it is not perceived how we could have refused to alter the former decree, but an examination of the record shows conclusively that the sale was made as well to pay debts of the succession as for the purpose of partition. Such is the statement in the order of sale, (the petition not making part of the evidence.) There is, also, a further order not referred to in argument, made in three suits against the succession, wherein it is stated, that, "for the purpose of meeting the pressing exigencies of the estate, the sale shall be made for a part cash in hand."

The petition further states that "the plaintiff specially brings this suit as executrix of the succession."

Executors as well as curators, tutors and other mandatories, are prohibited from purchasing part of the succession administered by them on pain of nullity, at a sale of property to pay the debts of the succession.

The case is, therefore, presented, of an executrix purchasing a part of the succession under her administration, and is a nullity ; for we think that the reason of the rule applies as well to executors as to curators, tutors and other mandatories. Article 1139, of the Louisiana Code, prohibits "curators from making such purchases by himself, or by means of a third person, under pain of nullity," &c. And article 1663, provides that "the executor shall proceed to the sale, in the same manner as curators of vacant successions." Article 1784, we also think under the class of "administrators," includes executors.

The plaintiff, however, contends that the nullity is not

absolute, but relative, and cannot be invoked by others than those in whose favor such nullity is pronounced, and to prove this, he argues that the sale might be ratified by the heirs and creditors for whose benefit alone it has been pronounced.

The test, we think, is not a correct one, as certain absolute nullities may be ratified by those interested. See 7 *Toullier, No.* 561. Indeed, it is difficult to understand how any nullity, on whatever considerations founded, may not be acquiesced in by those interested. But we can understand, that though they may choose to act as if it were valid, yet, if it be an absolute nullity, then ratification cannot bind others.

The same author, in No. 558, tells us, that the absolute nullity may be distinguished from the relative, easily :

" Toute disposition qui déclare positivement et sans restriction la nullité d'un acte, autrement la simple déclaration de nullité, quel qu'ait été le motif du législateur, soit pour cause d'intérêt public, soit pour l'intérêt des particuliers, soit pour vice de forme opère une nullité absolue, par cela même qu'elle n'est pas limitée à certaines personnes.

" Elle peut donc être invoquée non seulement par chacune des parties contractantes, par leurs héritiers ou ayant-cause, mais encore par toute personne intéressée à ne pas reconnaître l'acte nul."

If this definition be correct, the nullity pronounced by article 1139, prohibiting purchases by a curator, and pronouncing a simple declaration of nullity, is an absolute nullity, which, though it should be agreed to be merely for the interest of individuals, and so might be ratified as regards them, is still to be used to a certain extent by others, for the same author, in Nos. 563 and 564, distinguishes between the ratification of absolute nullities, declared for the interest of individuals, and of relative nullities, and says the former can have no retroactive effect, but is a new title, and cannot prejudice rights of third persons previously acquired, whilst the latter relates to the original act. The subject is one of difficulty, and we treat it with great diffidence.

That the defendant, for whose account and risk the second sale was made, had an interest that such sale should be

---

WESTERN DIST.

October, 1839.

SCOTT'S EXECUTRIX
vs.
GORTON'S EXECUTOR.

The nullity resulting from a prohibited sale to executors of property of the succession administered by them, is absolute. No subsequent ratification can give it effect against third persons, interested, who are not parties to the ratification.

The ratification of an absolute nullity, can have no retroactive effect, but is a new title, and cannot prejudice the rights of third parties previously acquired, whilst a relative nullity relates to the original act.

WESTERN DIST. legally made, and to the best advantage, is scarcely to be October, 1839. doubted ; that the party making such sale was bound to see the sale so conducted, is equally clear. The argument that he became purchaser, by bidding higher than any other, and thus did him a benefit, is unsound. "When to prevent fraud, or from any other motives of public good, the law declares certain acts void, its provisions are not to be dispensed with on the ground that the particular act in question has not been proved fraudulent," &c. The provision in question is not only for the protection of individual interest, but to maintain public order and morality. "Lead us not into temptation" is its basis. It boots not that the tutor of a minor, or the administrator of a succession, is the highest bidder, for, to be a purchaser, he must always be this. It would avail nothing, though he paid double the acknowledged value. His purchase is against public order ; it is prohibited, it is pronounced a nullity, and all persons interested may oppose it. And although those for whose interests the legislature may have also had regard, may hereafter ratify it, they cannot deprive others of the right of opposition acquired before such ratification.

For these considerations, it is ordered, that the former judgment of this court remain unchanged.