## No. 11,432.

### SUCCESSION OF ROSEMOND TROXLER.

Though the issues raised in an opposition to an administrator's account may be such as to require to be disposed of by a direct action, the opposition may stand by way of notice.

In proper cases where the result of a pending suit is dependent upon the decision in another, proceedings in the first may be stayed to await that decision.

The actions of an administrator should be subjected to full investigation. Whenever they appear of questionable legality ratification of the same should be established by very clear proof. Whenever practicable light should be thrown in aid of right.

APPEAL from the Twenty-first Judicial District Court, Parish of St. Charles. *Rost, J.*

---

ON MOTION TO DISMISS.

*T. J. Semmes & Legendre* for the motion:

The judgment appealed from was rendered by the judge of the Twenty-first Judicial District Court in and for the parish of St. Charles.

Appellant's petition of appeal is addressed to the Twenty-sixth Judicial District Court, and his bond of appeal is made payable to the clerk of the Twenty-sixth Judicial District Court, a judicial district distinct and separate from the Twenty-first Judicial District.

Where a petition is addressed to a tribunal different from that in which it is filed, *held*, the error is fatal.   6 N. S. 417, Watson vs. Tiera; 1 R. 96, Wadsworth vs. Harris.

C. P. 575: "Appeal bonds in all cases of appeal shall be made payable to the clerk of the court which rendered the judgment appealed from."   22 An. 133, Jaffray vs. Bruff.

The judgment appealed from is rendered by the Twenty-first Judicial District Court.   Appellant's appeal bond is payable to the clerk of the Twenty-sixth Judicial District Court.

No legal bond having been given, the appeal should be dismissed. 35 An. 363, Succession Calhoun.

---

*Gus. A. Breaux contra:*

The motion to dismiss is made because the petition of appeal and the bond furnished are addressed and made out to the Twenty-sixth Judicial District Court for the parish of St. Charles instead of the Twenty-first Judicial District Court, etc.

The succession was opened in the District Court for the parish of St. Charles, known under the Constitution of 1879, as the Twenty-sixth Judicial District Court.

In 1890 the State was redistricted, the number of judicial districts lessened, and St. Charles was assigned to the Twenty-first Judicial District.

All the proceedings, except the judgment entered by the clerk, were entitled the "Twenty-sixth Judicial District Court" instead of the "Twenty-first," but under the same original number and title of the docket and judicial district for St. Charles parish, including the exceptions filed to the opposition to be found at page 4 of the Record.

It is evident that the error was merely clerical and a natural one under the circumstances, misleading no one.

The appeal recites the title of the case, the judgment rendered and the court that rendered it.

There can be neither ambiguity nor uncertainty as to the judgment appealed from; nor can there be as to the responsibility of the surety on the bond. 35 An. 596, Klotz vs. McCready; 26 An. 318; 27 An. 271, 304; 45 An. 505.

*T. J. Semmes & Legendre* Attorneys for Administratrix, Appellee:

That the opponent can not attack sale of property made in 1882, for the reason that he received from the administratrix in March, 1891, his share of the proceeds of such sale under a final settlement; that he has thereby finally ratified it and is estopped from questioning its validity unless for error or fraud, neither of which is alleged. 21 An. 231, Douglas vs. Manning; Id. 581, Borden vs. Hope.

A receipt for money paid is not conclusive between the parties, but when the evidence offered is contradictory the receipt will stand. 29 An. 350, Haile vs. McGhee; 24 An. 318, Wells vs. Ernstein.

A final settlement can not be attacked without alleging error or fraud in the settlement. 15 An. 535, Williams vs. Springfield; 31 An. 100, Manson vs. Hoffman; 32 An. 121, Beard vs. Cash; 38 An. 645, Barrow vs. Barrow.

An heir or creditor who receives his share of the proceeds of a judicial sale thereby ratifies it, and is estopped from averring its nullity. 25 An. 54-125; 31 An. 100; 30 An. 838-947; 23 An. 17; 24 An. 253.

A final judgment rendered by a court of competent jurisdiction and the public sale made by virtue of it can not be attacked collaterally. 39 An. 55; 20 An. 124; 19 An. 353; 6 R. 471; 25 An. 55; 28 An. 755.

A purchaser at probate sale is not bound to look beyond the decree of the court ordering the sale to ascertain the necessity for the sale. 30 An. 891, Sharkey vs. Blankston.

Where the proceeds of sale of succession property have been used to pay the debts of an estate, an heir can not reclaim the property without first tendering the sum thus used. 9 An. 84; 30 An. 878; 32 An. 91, 106.

*Gus. A. Breaux* Attorney for Opponent and Appellant:

There is no such thing as an estoppel in favor of an administrator or executor.

Nor is there an estoppel in favor of a party for an act he could have been compelled to do. Ryan vs. Steward, 60 N. Y. 413.

To give rise to an equitable estoppel there must have been a false representation of facts, not matters of opinion, made, with knowledge, to a party ignorant of the facts, with the intent they should be acted on, and the party must have been induced to act thereupon and changed his position for the worse. Bigelow on Estoppel, p. 552; Am. and Eng. Ency., Estoppel, pp. 12 *et seq.*

The instant opposition is one to an administratrix' account. The receipt given was fully susceptible of explanation.

The ratification of a transaction which is illegal and a nullity is a recognitive and confirmative act; unless it is shown to have taken place with a full knowledge of the circumstances, and formal intention to cure the radical vices contained in it, and with which it is infected, by an unreserved sanction and approval, it can not avail. 43 An. 382.

The opposition is an answer (Suc. Romero, 28 An. 607) and is therefore a direct attack upon the issue tendered by the tableau. But an order of sale can be attacked collaterally. Succession Thompson, 42 An. 121.

An administratrix having funds more than sufficient to pay the debts of the succession can not sell real estate. 44 An. 383.

A debt due the wife for separate funds collected by her husband during marriage is a community debt and must be paid by the community. C. C. 2372; Downs vs. Morrison, 13 An. 379; C. C. 2403; 12 An. 604; 12 An. 222.

Where the property sold is exclusively the separate property of the husband the administratrix can not legally be a purchaser. C. C. 1146; Acts 1854, p. 155.

In the instant case the opponent is an heir; the account is rendered to him and he is entitled to be heard.

The account of an administrator is rendered to the creditor and heir of the estate which he administers. 15 An. 228; 24 An. 435.

———

The opinion of the court was delivered by

NICHOLLS, C. J.   Rosemond Troxler died in August, 1880, leaving a widow, several children and one grandchild, Rosemond Troxler,

Jr., child of a predeceased son. Three of the children were minors, and of these their mother was appointed and qualified natural tutrix. The grandchild was also a minor and his mother was appointed as his tutrix.

Upon the application of the widow an inventory was taken of the property of the succession on the 25th and 26th of October, 1880.

This property, as appears by the inventory, was valued at ten thousand seven hundred and eight dollars and seventy-two cents, and was all described as community property. The recapitulation shows:

| | |
|---|---:|
| Total value of real estate .................................................... | $4,300 00 |
| Total value of crops ........................................................... | 2,600 00 |
| Total value of movable property ...................................... | 1,828 15 |
| Total value of active credits left by deceased, consisting of promissory notes, debts due said deceased by verbal obligation, and cash.. ............... | 1,980 57 |
| Total amount ................................................................ | $10,708 72 |

In December, 1881, Mrs. Marie Troxler (the widow) filed a petition in which she alleged that the inventory which had been taken was erroneous, and that it was necessary that a new one should be made. She further averred that in order to settle the succession it was necessary that an administrator be appointed.

The inventory asked for was made on the 24th and 27th January, 1882, and the applicant was, after advertisement and delays, qualified as administratrix.

In the second inventory a certain tract of land which had been described in the first as community property was declared to be and inventoried as separate property of the deceased, and valued at three thousand dollars, and a one-fourth interest in a certain sugar house which likewise had been mentioned as belonging to the community was declared to have been erroneously so described and was inventoried as separate property of the husband and valued at five hundred dollars.

The sugar crop, which had been estimated at the sum of two thousand six hundred dollars, had been in the meantime manufactured and had netted not the amount stated, but the sum of one thousand and ninety-four dollars and ten cents, and the rice crop netted one hundred and forty dollars and ten cents instead of two hundred and twenty-five dollars, the sum it had been expected to realize.

In March, 1882, upon the application of the widow, who represented to the court that all of the property dependent upon the suc-

cession of her late husband (save that mentioned as separate in the second inventory) was community property, she was placed in possession of the same as usufructuary. Simultaneously with the application just mentioned she prayed for a sale of the separate property, declaring the sale to be necessary to pay the debts of the succession.

The property was sold under an order of court rendered upon this prayer, and at the sale the widow became the adjudicatee at the price of three thousand dollars.

On the 1st of June, 1882, the administratrix filed a petition in which she declared that as survivor in community she had claimed and been awarded the usufruct during her natural life of the proper y depending upon the community between herself and her husband; that the separate property as shown by the inventory consisted in a sugar plantation and the undivided one-fourth of a sugar house thereon; that she had caused said property to be sold according to an order of court to pay debts, and from said sale she had realized the sum of three thousand dollars, and that she presented a tableau showing the proper disposition to be made of that fund. She prayed that notice of the filing of said tableau be given by publication, and by personal service upon the heirs, and that all parties te ordered to show cause why the tableau should not be homologated and the administratrix authorized to ;make payments accordingly.

In the tableau referred to the administratrix charged herself with the sum of *three thousand dollars*, as proceeds of the sale of the separate property, and she proposed to account for that amount by paying out of that sum *five hundred and five dollars and ninety-three cents*, which seem to be the entire costs of the administration of the husband's succession, and *twenty-two hundred and seventy-three dollars and seventy-one cents* as an amount due to the administratrix individually by her husband's succession for a like amount of her separate funds received by her husband for her account, which had never been turned over to her, but had been expended by him.

The tableau closes by the following recapitulation and statement:

Amount of assets ................................................................................................ $3,000 00
Amount of debts ......................................................................................... 2,889 64

Balance for distribution.................................................................................... $110 36
The heirs are five in number, making the share of each.................................... $22 07

At the foot of the tableau we find the following statement:

---
Succession of Troxler.
---

I have examined the above and foregoing tableau and found the same to be correct, and have no objection to the same being homologated.

St. Charles, May A. D. 1882.

(Signed) JUSTINE BOURGEOIS.
FRANCOIS TROXLER.
EDOUARD TROXLER.
LOUISIANA TROXLER.
F. ST. MARTIN.

And under these signatures the following:

The within petition being considered the prayer thereof is granted.
St. Charles, May 31, A. D. 1882.

(Signed) M. HAHN, *Judge.*

We find no order homologating this tableau. Justine Bourgeois and Francois Troxler, who signed the above consent, were the tutrix and under-tutor of the minor Rosemond Troxler, Jr. This minor was emancipated and relieved from the disabilities which attach to minors on the 14th January, 1889, by judgment of court. Subsequently to this he signed the following receipt:

Received, parish of St. Charles, March 3, 1891, from Mistress Marie Polimine Troxler, widow of the late Rosemond Troxler, administratrix of her said husband's succession, the sum of thirty-one dollars and ninety cents, being amount due me as per tableau of distribution and interest thereon, filed June 1, 1882, as heir therein by representation of my father, Lucien Troxler, thirty-one dollars and ninety cents.

ROSEMOND TROXLER.

In October, 1891, he filed an opposition to the tableau of distribution which had been filed in the succession of his grandfather by the administratrix.

In this opposition he averred that he only became of age in the year 1891; that he opposed the tableau because it failed to account in any manner for the large personal property shown to have belonged to the estate in the hands of the administratrix which was much more than was sufficient to have paid any debt existing, and the sale of the real estate was illegal and unwarranted, because as there was in existence and in the hands of the administratrix funds and personal assets belonging to the community and estate of the deceased more

than sufficient to pay all indebtedness alleged to be due she could not legally ask for the sale of real estate, the separate prope ty of the deceased, to reimburse to herself her alleged paraphernal dues even if real, and this indebtedness was exclusively that of the community. That the sale to the administratrix was invalid, illegal, null and void because, further, as the judicial representative of the estate she could not purchase it at a sale provoked of the separate and sole property belonging to the estate. That the order of sale rendered March    1882, was illegally and improvidently issued and was a nullity.

The prayer of the opposition was that the tableau be rejected, annulled and set aside; that the sale of the real estate be decreed null and void and of no effect.

The administratrix excepted to the opposition on the ground—

1. That opponent could not attack the sale described, for the reason that he received from her in March, 1891, under a final settlement then made, his share of the proceeds of said sale; that he ratified it and is estopped from questioning its validity.

2. That said settlement can not be set aside unless it be for error or fraud, neither of which is alleged.

3. That he can not attack by an opposition the sale described in his petition; that a direct action is necessary.

4. That the property described in his opposition now belongs to J. C. Triche; that all parties in interest are not before the court.

5. That the decree of the court under which the sale was made can not be attacked collaterally.

On the trial judgment was rendered in favor of the administratrix and against the opponent, and dismissing the opposition.

In passing upon the case only one issue was examined and disposed of by the court. It held that the receipt given by the opponent as explained by his testimony was a complete ratification of the acts of the administratrix under Article 1875 of the Civil Code.

Opponent has appealed, and the administratrix has moved to dismiss the appeal upon the ground—

1. That the petition for appeal is not addressed to the court which rendered the judgment appealed from, it being addressed to the judge of the Twenty-sixth Judicial District Court instead of the Twenty-first Judicial District Court.

2. That the bond of appeal is made payable to the clerk of a dis-

trict different from the one in which the case was tried and decided, said case having been tried and decided by the Twenty-first Judicial District Court for the parish of St. Charles, and the said bond being made payable to the clerk of the Twenty-sixth Judicial District Court for the parish of St. Charles.

The designation of the district as the Twenty-sixth Judicial District was an immaterial clerical error. The proceedings were all carried on in the Judicial District Court of the State of Louisiana for the parish of St. Charles. The petition of appeal was addressed to that court, and the bond was made payable to the clerk of that court. That was sufficient (see Clark vs. Comford, 45 An. 502).

The motion to dismiss must be and is overruled.

The district judge having expressly referred to the testimony of the opponent in connection with the receipt, it may be well, as it is not long, to state it. He stated: "I was given no written statement (no written papers were submitted to me) at the time I signed that receipt. The nature of the settlement made with me on March 3, 1891, explained nothing to me. Mr. Triche (the person acting for the administratrix in the matter of the payment) told me at that time that that was my money, and that he wanted to pay it. I was shown none of the succession papers, and was told nothing about them." On cross-examination he stated that the account of the administratrix was not shown to him; that he figured the amount of interest due him—he knew what he was about—he did not remember what was the result of the calculation; he received from Mr. Triche thirty-one dollars and ninety cents. That his grandmother promised to give him one hundred dollars; he told Mr. Triche at the time of the settlement that his grandmother had promised him one hundred dollars. Triche told him that was all she gave him to give him; then he took it. That the settlement is incorrect, because she gave the others one hundred dollars and she promised his mother to give him one hundred dollars, so his mother told him; that he did not know to what he was entitled; he did not say the settlement of March 3 was incorrect; he did say his grandmother promised his mother one hundred dollars; he knew nothing about it; he knew that his grandmother gave her other children one hundred dollars, because she told his mother and she told him; that he did not know what he was entitled to as heir of his grandfather; he did not know what the debts of his estate

amounted to; he was 22 years of age; came of age on the 5th of February, 1891; he knew that a proper settlement of the estate, according to law, would show what he was entitled to, and he had employed a lawyer to find that out.

J. C. Triche (who, as we have said, was the party representing the administratrix in the payment), being placed upon the stand, deposed that he showed the opponent the account in the succession of Troxler, and that he took the figures therefrom and computed the interest thereon; that he (witness) took the account and took the amount therefrom for his calculation and he told the opponent the amount.

This witness is a son-in-law of the administratrix, and is, we presume, the party referred to in the pleadings as the present owner of the property whose sale is attacked, he holding it by purchase from the administratrix after she had herself bought it. Opponent's counsel is in error in stating that the act of sale to J. C. Triche was never offered in evidence, and that it is improperly in the record. The act was offered and admitted over opponent's objection (see page 38 of the transcript) and a bill of exception was reserved.

We are of the opinion that the issue which the opponent tendered and seeks to have disposed of touching the legality of the sale made in the matter of the succession of his grandfather can not, at this time and in the present form, be passed upon; that a direct action for that purpose would be necessary, and, inasmuch as the property appears to have passed into the hands of a third person, that it would be proper to make him a p rty to tha: suit.   15 An. 228, Cather vs. Kerr; Succession of Sanchez, 41 An. 506.

If such an action were brought, and should terminate favorably to the plaintiff, the direct result of the decision would be to do away with the account filed by the administratrix.   That account is not a general settlement of the affairs of the succession of Rosemond Troxler, carrying with it, as incidental thereto, a full and complete settlement of the community of acquets and gains.   The account is nothing more than a  proposed application of the fund or  price aris- ing from the succession sale of a specific piece of real estate, which belonged to the separate estate of the deceased, and of which she had become the adjudicatee, to the payment of a claim alleged by the administratrix to be due to her by reason of her husband having received and expended and not accounted for certain of her para-

phernal funds, and to the further payment of the entire expenses of the administration of the succession.

The administratrix singled out one particular act in her administration and made it the basis and sole basis of the account she filed.

There has been no attempt even up to date to liquidate the community, and, prior to her appointment as adminis'ratrix, the widow had caused herself, by an *ex parte* order, to be placed in possession of all the community property as usufructuary, under the act of 1844. Succession of Fitzwilliam, 3 An. 489; Succession of Bringier, 4 An. 389; Day vs. Collins, 5 An. 588.

At the time of the death of her husband very considerable property, real and personal rights and credits, were left belonging to that community.

The property of the separate estate, consisting of a small plantation and an interest in the sugar house, which were inventoried together at thirty-five hundred dollars, was subsequently purchased by her, at a succession sale which was made upon the *ex parte* application of the administratrix, as necessary to pay debts by the administratrix, at three thousand dollars.

The small balance left after payment of the expenses of administration and the claim of the widow is declared to be the amount due to the heirs of the [husband, and it is the receipt by the opponent of the one-fifth of this amount upon which the District Court acted in reaching its conclusions.

*Prima facie* the receipt and expenditure by a husband of the paraphernal funds of the wife would give rise to a debt by the community, and would be primarily payable out of community assets (Lawson vs. Lawson, 12 An. 604; Downs vs. Morr son, 13 An. 379). We say *prima facie*, for the husband's separate estate might, under exceptional circumstances, be held liable for a claim of that character as for a debt due by himself individually.

The manner in which the succession of Troxler has been conducted has not been such as to impress us as calculated to lead up to correct legal results. It will be seen from the recitals made that even should plaintiff fail in an attempt to have the succession sale set aside, he would still be in position to question the application of the price as attempted to be made, unless by some act of his own he has deprived himself of that right. If he has done so, it would be upon the theory of a ratification by him of everything which had

been done. We are not satisfied that opponent at the time he received the money had such a knowledge of the situation as should bind him by ratification. Rives vs. Bernard, 13 La. 168; Bennett vs. Bennett, 12 An. 254; Williams vs. Palace Car Co., 40 An. 93; Rist vs. Hartner, 44 An. 382; Breaux vs. Sarvoie, 39 An. 246.

As between the parties to transactions whose legality is fairly debatable, the doctrine of ratification should not be too rigidly applied. Light should be permitted to be thrown in as far as possible in aid of right. We are exceedingly doubtful whether opponent was aware that the property which was sold had been dealt with as the separate property of the grandfather, or whether he knew the circumstances under which the funds of the grandmother had been received by him, or how they had been applied. In commenting upon the administration of the widow, we leave matters completely at large, our remarks being intended simply as explanatory of our reasons for doing so. We think the ends of justice would be best attained in this case by subjecting the administration to full investigation and to the tests of law.

Although in this case the legality of the succession sale can not be passed upon the opposition filed is not without some effect upon that question. In the Succession of Bartlett, 21 An. 532 (on rehearing), an opposition which was dismissed for want of jurisdiction was none the less held good as a notice, and in the Succession of Sanchez, 41 An. 506, the court, referring to the opposition in that case, recognized that accounts could sometimes be properly withheld from homologation to await judgment in another suit, which, when decided, might have a controlling influence on the pending case.

In the case at bar we feel satisfied that all the claims for succession expenses have been paid by the usufructuary, whose duty it was to have done so long ago, and that the payment of no debts will be held up by the non-homologation of the account for the present.

For the reasons assigned it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and this case is hereby remanded to the lower court for further proceedings according to law, with leave granted to the opponent to amend his pleadings.

Rehearing refused.