(38 South. 142.)

No. 15,342.

TUCKER et al. v. BENEDICT et al.

(Jan. 30, 1905. On Rehearing, March 13, 1905.)

ADMINISTRATION OF SUCCESSION — SALE OF REALTY—PURCHASE BY ADMINISTRATOR—NULLITY—ACTION BY HEIRS.

The administrator of a succession, in which he had no interest as an heir, obtained from the deputy clerk of the district court (he being unauthorized to give the same) an order to sell the property of the succession. A commission issued, authorizing him, as administrator, to make such sale. Acting as auctioneer, he adjudicated the property to himself individually for $1,020. This sale was the only attempted act of the administrator. On the day of his purchase he sold the same property at private sale to a third person for over $4,000. The property by successive sales passed into the possession of different vendees. After the last of these sales the administrator and the heirs of the succession joined in a petition in which they prayed that the administrator be discharged from his trust, and his sureties discharged, and judgment was rendered accordingly. The heirs then brought this petitory action for the recovery of the property. The defendants admitted the nullity of the sale, but pleaded the discharge by the heirs of the administrator and his sureties as an estoppel.

For reasons assigned, the plea is *held* to be not well founded. Le Bleu v. Timber Co., 16 South. 501, 46 La. Ann. 1470.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert Raymond Reid, Judge.

Action by W. W. Tucker and others against H. P. Benedict and others. Judgment for defendants, and plaintiffs appeal. Reversed.

Clay Elliott and Alfred Wood Spiller, for appellants. Stephen D. Ellis, John W. Sentell, Benjamin Moore Miller, Hypolite Mixon, Obadiah Pierson Amacker, and W. M. Wright, for appellees.

### Statement of the Case.

NICHOLLS, J. Plaintiffs seek in this suit to be decreed joint owners of certain described property alleged to be in the possession of the different defendants, and to have decreed absolute nullities the titles which they set up adversely to themselves.

Rachel Tucker, who was plaintiffs' grandmother, was twice married. Her first husband was William Packwood. There was issue of that marriage one child, George H. Packwood, one of the defendants.

After the death of her first husband, the widow married James Tucker, who was the grandfather of the plaintiffs.

There was issue of that marriage three children, Alphus G. Tucker, William H. Tucker, and Spencer W. Tucker. Rachel Tucker died in the parish of Tangipahoa in January, 1879, leaving as her heirs her abovenamed four sons. James Tucker died intestate in 1891.

His three sons, Alphus G. Tucker, William H. Tucker, and Spencer W. Tucker, had all died before him, and intestate.

On the 3d of March, 1879, on the petition of the surviving husband, James Tucker, an inventory was made in the succession of Rachel Tucker. The inventory showed $4,355 worth of movables, and $1,500 worth of immovables.

On the 23d of July, 1883, the four heirs

of Rachel Tucker sold to James Tucker all their right, title, and interest to certain described property. James Tucker died, as above stated, in 1891, but his succession was not opened until December 29, 1894, when George H. Packwood presented a petition in which he alleged that his mother, Rachel Tucker, departed this life in 1879, and James Tucker in 1891, and there was left by said deceased considerable property, both separate and community property, and also some debts and charges against said estate—

"That he was a beneficiary heir, and the only one present in the state, and the only major heir present; that there had never been any division or separation of said estate; and that an administration was necessary in order to pay the debts and preserve the property until the time of final partition, and settle it up according to law. He prayed that an inventory of said estate be made according to law, and that he be appointed and qualified as administrator of said succession according to law."

On this petition the district judge ordered that an inventory be made of all the property of the succession of James and Rachel Tucker, that advertisement be made of the application of Packwood, and that, after all legal requirements had been complied with, that he be appointed administrator of the estate of James and Rachel Tucker, deceased.

An order issued that an inventory be taken of all the property belonging to the "estate" of James and Rachel Tucker. The oath taken by the appraisers was to faithfully appraise all the property pointed out to them as belonging to the succession of James and Rachel Tucker. The inventory taken under the order was of the property "of the succession of James and Rachel Tucker." The oath taken by Packwood, and the bond executed by him, were as administrator of the succession of James and Rachel Tucker, and "letters" issued to him as such.

On the 22d of January, Packwood, as administrator of the succession of James and Rachel Tucker, presented a petition to the district court for the parish of Tangipahoa in which he averred that there were some debts and charges against said succession, and also a portion of it needed repairing and renovating, especially the hotel and buildings in Ponchatoula; that a portion of the land was being continuously depredated upon, particularly that portion lying on and near the Ponchatoula river, and it was to the interest of the estate to dispose of the same, which would realize funds to settle all the debts of the estate, repair the other property, and have some means to turn over to the widow and minor heirs, who then needed assistance. He prayed for an order empowering him to sell the property inventoried for cash, provided it brought two-thirds of its appraised value.

The deputy clerk of the court upon said petition ordered Packwood, administrator, to sell at public auction the property inventoried, provided it brought two-thirds of its appraised value. A commission to sell issued to him as administrator of the succession of James and Rachel Tucker. Packwood, as administrator, advertised the property for sale as belonging to the succession of James and Rachel Tucker; and it was, as such, adjudicated by Packwood, acting as auctioneer, to himself, as being the last and highest bidder, for the sum of $1,020, as being over two-thirds of the appraised value. The procès verbal of sale was made out by Packwood himself, and therein he, as administrator, transferred the property to himself individually; recognizing and declaring that the purchaser had complied with the terms of the sale, by paying to him the amount of his bid.

On the 23d of February, 1895, Packwood sold the property to John W. Sentell for $4,043; $1,000 cash; the balance represented by the purchaser's note, payable in February, 1896, with 8 per cent. interest from date, secured by special mortgage and vendor's privilege. In the act of sale it was

declared that the property sold was the same land purchased that day. by Packwood from the succession of James and Rachel Tucker, he being one of the heirs of said deceased.

On the 20th of March, 1895, Sentell sold a portion of the property containing 500 acres to Anna S. Sanford for $5,000.

On the 14th of October, 1895, Anna S. Sanford sold the property which she had purchased to F. W. Sanford for $1,000.

On the 10th of December, 1895, F. W. Sanford sold the property to H. P. Benedict for $2,000.

On the 20th of June, 1895, John W. Sentell sold a portion of the property which he had purchased to H. P. Benedict for $3,080— $1,000 cash, and the balance on credit. On the 11th of June, 1896, H. P. Benedict sold a portion of the property to Paul A. Hoffmann for $200 cash, and on the 26th of May, 1897, he sold him another portion of the property for $300 cash.

On the 6th December, 1897, H. P. Benedict sold a portion of the land he had bought to John Herman for $1,700 cash, and another portion of the same to him on the 26th of May, 1898, for $200 cash.

On the 9th of September, 1897, John Herman sold to Philip Herman. On the 14th of November, 1898, H. P. Benedict sold a portion of the property to W. G. Wilmot. On the 30th of March, 1900, H. P. Benjamin sold a portion of the property to Asahel W. Cooper. On the 15th of October, 1901, H. P. Benedict sold a portion of the property to the Hammond State Bank. On the 16th of December, 1901, H. P. Benedict sold a portion of the property to John W. Sentell.

Some time in May, 1903, prior to the 18th, the plaintiff and George H. Packwood presented in the matter entitled, "Succession of James and Rachel Tucker, Deceased," a petition to the district court for Tangipahoa, in which it was declared: That Eleonora Tucker, Florence Tucker, and Daisy Tucker were the sole heirs of James Tucker, deceased,

and that they, with George H. Packwood, were heirs of Rachel Tucker, deceased. That Rachel Tucker was the wife of James Tucker by second marriage, and they both died in the parish of Tangipahoa. George H. Packwood was appointed administrator, after the death of James Tucker, of the succession of James Tucker and Rachel Tucker, as would be seen by the letters as such issued to him on January 18, 1895, in succession proceedings entitled, "Succession of James and Rachel Tucker," No. 549 of the docket of the late Sixteenth Judicial District court for the parish of Tangipahoa, and gave bond as such on the same day. That James and Rachel Tucker both died intestate. That the succession of James and Rachel Tucker owes no debts, and that there are no claims of any kind against their estates, and that there is no need of any further administration of their estates by an administrator. That they were each more than 21 years of age, and that George H. Packwood had sold and delivered to the other petitioners all his rights, title, and interest in and to the property in which his mother, Rachel Tucker, had an interest as the wife in community of James Tucker, and it was the desire of all the petitioners to relieve George H. Packwood, administrator of said succession, without requiring from him any account as such, and to have his bond given as such canceled, and the securities thereon discharged, and that the petitioners, Walter W. and Eleonora and Florence and Daisy Tucker, above named, be recognized as the exclusive owners and possessors together of the property, rights, title, and interest belonging to the estate of James Tucker, as his sole heirs, and also of all the property rights, title, and interest left by and belonging to the estate of Rachel Tucker, as heirs, and by purchase from George H. Packwood. The prayer of the petition was that there be judgment relieving George H. Packwood of his office of administrator of the successions of James

and Rachel Tucker, No. 549 on the docket of the late Sixteenth Judicial District court for the parish of Tangipahoa, without requiring from him any account as such, and ordering his bond as administrator therein canceled, and the sureties thereon released and discharged therefrom, and decreeing petitioners, Walter W., Eleonora, Florence, and Daisy Tucker, to be the sole heirs of James Tucker, and as such the exclusive owners of all the property, rights, title, and interest of every kind left by him, situated in the parish of Tangipahoa, and that petitioners, Walter W. and Eleonora and Florence and Daisy Tucker, be authorized to take possession of all the property left by James and Rachel Tucker, to do therewith as they deem proper.

The district court rendered a judgment upon this petition on the 18th of May, 1893, in which it is stated that in consideration of the petition, and as it seemed that George H. Packwood, administrator of the succession of James and Rachel Tucker, was appointed administrator of said succession January 18, 1895, and had performed, as far as the record showed, no act of administration, except to provoke the sale of some real estate belonging to the succession of James Tucker by petition filed January 22, 1895, and there being no evidence of any claims against the said estate, and as all parties in interest were in favor thereof, it was adjudged and decreed that—

"George H. Packwood be, and he is hereby, discharged from his office of administrator of the succession of James and Rachel Tucker; and it is ordered that his bond given as such be canceled, and Robert L. Draughn and Daniel Hardy Sanders, sureties thereon, be discharged from all further liability thereon; and it is further ordered that Walter W. Tucker, Eleonora Tucker, wife of Herman J. Vanderbrook, and Florence Tucker. wife of William A. Jackson, and Daisy Tucker, be, and they are hereby, recognized as the sole heirs of James Tucker, and, as such, the sole owners and entitled to the possession of all the property left by him. All without prejudice to, or impairment of the rights which Walter W. Tucker and Eleonora Tucker may have, in the event it is found that they have any, by virtue of the act of sale from A. G. Tucker to S. W. Tucker, recorded in Book No. 12, pages 337, 338, of the conveyance records of this parish, all as the law directs and as prayed for."

Plaintiffs alleged in their petition that on January 22, 1895, Packwood, administrator, obtained from Thomas E. Warner, who was then clerk of court in and for the parish of Tangipahoa, an order for the sale of the property above described, addressed to himself, as administrator, which purported to authorize the sale of said property for the sum of $1,020 cash; that said order of sale is, signed, "T. E. Warner, Clerk;" that the petition was not addressed to the clerk of court, and it is not alleged in said petition that the district judge was absent from this parish or recused, and it was not accompanied by a statement of debts of the succession; that said Warner had no authority, power, or jurisdiction to authorize the sale of said property; that the sale was not made by due process of law, and the same was at the time it was made, and was still, an absolute nullity, without force or effect, for said reason, and not only the above, but said Packwood was incapable of becoming the purchaser and owner of said property at said sale; that said Packwood was not an heir of James Tucker; that James Tucker acquired said property after the death of Rachel Tucker, and said property belonged exclusively to the succession of James Tucker, and the law prohibited said Packwood from purchasing said property at said sale; that the adjudication to him purported to have been made was, and still continued to be, an absolute nullity, and without force or effect; that their ownership of said property had never been divested; that their ownership should be recognized, and they should be restored to the possession of the same.

The parties in interest were cited, and all filed a general denial, coupled with a plea of prescription of one and five years. Reciting the allegations of the petition filed on the 18th of May, 1903, by the plaintiffs, un-

der which Packwood, administrator, was discharged as administrator, they pleaded that said action taken by them estopped the plaintiffs from contesting the titles of the defendant.

Sentell called Packwood in warranty. The other defendants called their respective vendors in warranty.

The district court sustained the plea of estoppel filed on behalf of the defendants, and dismissed their suit, and from that judgment they have appealed.

Plaintiffs refer the court to section 4 of Act No. 43, p. 55, of 1882, amended by Act No. 13, p. 11, Acts of 1894, and to Act No. 43, § 6, p. 55, of 1882; to articles 1146 and 1790 of the Civil Code; to McCarty v. Bond's Adm'r, 9 La. 351; Baldwin's Ex'r v. Carleton, 15 La. 394; Dugas v. Gilbeau, 15 La. Ann. 581; Ambrose v. Marsh, 27 La. Ann. 241; Chaffe v. Farmer, 34 La. Ann. 1017; and Succession of Stanbrough, 37 La. Ann. 275; to article 2272 of the Civil Code, and the following decisions thereunder: Breaux v. Sarvoie, 39 La. Ann. 243, 1 South. 614; Rist v. Hartner, 44 La. Ann. 378, 382, 10 South. 760; Scott's Executor v. Gorton's Ex'r, 14 La. 115, 33 Am. Dec. 578; Wood's Heirs v. Nicholls, 33 La. Ann. 744; also to the following decisions: Self's Heirs v. Taylor, 33 La. Ann. 769; Succession of Troxler, 46 La. Ann. 738, 15 South. 153; Aronstein v. Irvine, 49 La. Ann. 1478, 22 South. 405; Landry et al. v. Landry, 105 La. 362, 29 South. 900; Rocques' Heirs v. Levecque's Heirs, 110 La. 307, 34 South. 454; George v. Delaney, 111 La. 761, 35 South. 894. To these may be added Le Bleu v. Timber Co., 46 La. Ann. 1470, 1471, 16 South. 501.

Defendants urge: First. That one cannot approve a transaction in so far as it is beneficial to him, and repudiate in so far as it is not beneficial. State ex rel v. New Orleans, 105 La. 768, 30 South. 97.

Second. That minors after attaining majority may expressly or tacitly ratify a sale

of their property which was absolutely void. Chesnau's Heirs v. Sadler, 10 Mart. (O. S.) 726; Huset's Heirs v. Lefebvre, 6 La. 601; Vaughan v. Christine, 3 La. Ann. 328; O'Connor v. Barre, 3 Mart. 446; Seyburn v. Deyris, 25 La. Ann. 483; Jamison v. Smith, 35 La. Ann. 609; Sewall v. Hebert, 37 La. Ann. 155.

Third. When minors after attaining majority settle with their tutors or with an administrator for the price of land illegally sold by him, with knowledge of the facts, such settlement is a ratification of the sale, and the minors are estopped from attacking it. See authorities above cited.

The district judge, in his opinion, after stating the facts, declared that the mere statement of the same would sufficiently characterize the acts of the administrator. The administrator made the sale and adjudication to himself. On the same day he sold the same property for the price of $4,000 to John W. Sentell—almost four times the price for which he had adjudicated it to himself. Were this all of the record, it is not to be supposed that any attorney would stand before this court asserting the validity of the sale or sales, but the defendants plead that plaintiffs, by the effect of a settlement between them and the administrator, George H. Packwood, their half-brother, are estopped from pursuing the property in their hands. The district judge recites the allegations of the petition on which the estoppel was based, and then says:

"The question before the court is not as to the validity of the sale, which unquestionably, before this transaction between the heirs and George H. Packwood, had no legal force. Its illegality is too palpable for discussion. But the question is, can the heirs, after settling with him, and procuring the discharge of the administrator without his accounting, and where the record shows there was but one item accounted for, subsequently bring suit to set aside and annul the act of the administrator out of which this indebtedness to the heirs grew? I am of opinion they cannot.

"The plaintiffs have received from George H. Packwood, in settlement of their claim against

him, his interest in his and their mother's succession. Of its value the court is not informed. From the record, the court can only presume that the settlement was made by transfer of the administrator's property to the plaintiffs, or the proceeds of the only sale of succession property he is shown to have made.

"Plaintiffs voluntarily discharged him from his responsibility to the court. If they succeed in this suit, and turn their half-brother loose with a thousand and twenty dollars of the money which they could no longer compel him to account and produce, they having discharged the surety on the bond, they have condoned and ratified his transactions as administrator. Perhaps the nearness of the relationship in blood to them may have prompted them to this course, but, if their affection for this kinsman dictated to them the release of him, the prime cause and actor in the fraud that had been perpetrated, it cannot be tolerated that they should recoup themselves at the expense of strangers in blood.

"In the judgment prepared by plaintiffs' counsel (their counsel also in the present case), it is stated that he has performed, so far as the record shows, no act of administration, except to provoke the sale of some real estate belonging to the succession of James and Rachel Tucker, by petition filed January 26, 1895. The plaintiffs, on the day this petition was presented to the court, were entitled, under the law, to require of George H. Packwood, administrator, an account of the administration of the succession of James and Rachel Tucker. If they had required this account, they must have known (as their counsel knew) that one of the items on this account must necessarily be the price received by him for real estate on February 23, 1895, complained of in this present suit. In exercising the right to settle with the administrator without the filing of a final account, they are presumed to have settled with him upon the basis of what the record, at least, shows was due by him as administrator.

"The only sum due by George H. Packwood, as administrator, to the plaintiffs, as far as the record shows, and as is declared in the judgment prepared by plaintiffs' counsel (which is the usual practice in this court), is the amount received from the sale of this real estate. The plaintiffs have accepted from George H. Packwood a transfer of his right to the succession of his mother, Rachel Tucker, in settlement of their claim against him. In the absence of proof of any other claim, the presumption is that they accepted this property in settlement of the claim shown by the record, to wit, the proceeds of the sale of the property which plaintiffs in their petition in the present suit complain of, for one thousand and twenty dollars."

## Opinion.

The defendants say in the brief filed on their behalf that:

"They do not contend that the sale made by Packwood as administrator was legal. Their defense is that the plaintiffs have ratified and settled with the administrator for the proceeds of it, and cannot now assert its illegality."

The issue submitted to the court is therefore a narrow one. The adjudication made by Packwood, as administrator, to himself individually, was an absolute nullity. The property remained after the adjudication that of the heirs of James Tucker, and Packwood's sale thereof on the same day to Sentell was of property belonging to third persons. Having no title to it himself, he could confer none on others. The question is, had anything occurred since the adjudication so made which would give legality and validity to that adjudication, and convey title and ownership to Sentell, and to the various purchasers of the property under him? The petition on which the defendants rely was filed and acted upon in May, 1903, long after the dates of all the acts of sale by which the defendants purchased. Their course was in no manner influenced by that petition.

When Packwood, without any legal authority, disposed of the succession property, the heirs of the succession were entitled to disregard this illegal conveyance, and bring a direct action to recover it from the parties having possession of the same. Those parties could not drive the heirs to an action of damages against the administrator, or force a settlement and liquidation of the succession. They were neither creditors nor heirs of James Tucker, and had no concern in the administrator's bond. These views we here express receive direct support from the decision of this court in Le Bleu v. Timber Co., 46 La. Ann. 1470, 1471, 16 South. 501.

We are by no means prepared to say that the mere fact that the heirs of James Tucker consented to Packwood's being discharged as administrator had the effect of releasing him individually from all liability or responsibility to those heirs for having illegally disposed of their property, though such consent did discharge the securities on the adminis-

trator's bond. There is no declaration in the petition touching a settlement or a release. We cannot concur with the district court in its conclusions in respect to the petition for the discharge of Packwood as administrator, and the action of the court. They are based upon presumptions which to us do not appear weighty, precise, and consistent.

The court says the heirs—

"Were entitled * * * to require of George H. Packwood, administrator, an account of the administration of the succession of James Tucker and Rachel Tucker. If they had required this account, they must have known (as their counsel knew) that one of the items on this account must necessarily be the price received by him for real estate on February 23, 1895, complained of in the present suit. In exercising the right to settle with the administrator without the filing of a final account, they are presumed to have settled with him upon the basis of what the record, at least, shows was due by him as administrator. The only sum due by George H. Packwood, as administrator, to the plaintiffs, as far as the record shows, and as is declared in the judgment prepared by plaintiffs' counsel (which is the usual practice in this court), is the amount received from the sale of this real estate."

We see no basis for the proposition that, because the heirs were willing to have the administrator discharged without filing an account, therefore they must be presumed to have settled with him at the time or prior to their having given this consent. If, in point of fact, the only act of attempted administration by Packwood was this illegal sale by himself, it would have been an act of folly for them to have ruled him to file an account in which the only thing which could figure was the price which therein he might perhaps have alleged that he had received from himself, arising from the illegal sale of the property. He certainly had no legal right to have charged the heirs with that amount, and we cannot possibly assume, in view of the fact that Packwood would be claiming to have purchased it for $1,020 when he sold it on the same day to Sentell for over $4,000, that the heirs would have consented to have accepted that small amount, and in lieu of the property; non constat, besides, that they wished to have the property sold at any price. If the intention of the heirs was to disavow the illegal act, as there was every reason to suppose they had, why should they have forced him to place the pretended price of the property on an account which they could and would undoubtedly have successfully opposed and had rejected? There had been no sale of the property, and there had been no price paid, as Packwood, the administrator, was himself the declared adjudicatee. There was therefore no sum due by Packwood, as administrator, to the heirs of Tucker.

A logical reason for the heirs not calling for an account was that there was nothing which the administrator had to account for, save for this illegal act, and as to that they preferred (as they had the unquestionable legal right to do) moving directly for the recovery of their own property itself, still existing in kind, than attempting to hold him liable in damages for false administration. Le Bleu v. Timber Co. The fact that, under the circumstances of the case, an account was not called for, disclosed an intention on their part to act dehors the succession in enforcement of their rights.

The court, after assuming that some settlement had been made between Packwood and the heirs of Tucker, declared that "the plaintiffs had accepted from Packwood a transfer of his rights in the succession of his mother, Rachel Tucker, in settlement of their claim against him. In the absence of proof of any other claim, the presumption is that they accepted this property in settlement of the claim shown in the record; that is, the proceeds of the sale of the property which the plaintiffs in this suit complain of—$1,020." We find no warrant for declaring that plaintiffs had divested the ownership of real estate by a mere presumption that they had received therefor $1,020. It is true that, in the petition for the discharge of Packwood as administrator, the fact is recited that Pack-

wood had sold and delivered to the heirs of Tucker all his right, title, and interest in and to the property in which his mother had an interest as the wife in community of James Tucker; but that recital does not lead up, by any means, to the conclusion that the consideration of that transfer by Packwood of his mother's interest in the community property, the $1,020, was supposed to represent the price of the sale of James Tucker's real estate to Packwood. Particularly is this so in view of the result accomplished by the petition (in which petition Packwood was himself one of the petitioners)—that, though Packwood was discharged, the judgment based on the petition recognized and decreed that the other petitioners therein were recognized as the sole heirs of James Tucker, and, as such, the sole owners and entitled to the possession of all the property left by him.

The property claimed in this petition was property owned and left by James Tucker at his death, and falls directly under the terms of the judgment. Packwood himself concurred in that judgment. The property in question did not belong to the community, but belonged exclusively to James Tucker. It did not fall under Packwood's administration as community property. The community had nothing to do with it. If Packwood thought proper, when applying to be appointed administrator of James Tucker's succession, to add the words "and Rachel Tucker" there was no ground for the wife's name being mentioned in that connection. The settlement of the husband's succession carries with it sometimes the settlement of the wife's succession, but in that particular case the wife died before the husband, and the heirs, including Packwood, sold their interest in this property to their father, James Tucker.

We do not find in this case, as did the district court, any equities in favor of the defendants. Sentell very imprudently and incautiously, if not in bad faith, bought as Packwood's property, property which evidently did not belong to him, and the other defendants were equally imprudent and incautious in purchasing under Sentell. The plaintiffs in this suit are simply claiming their own. Defendants cannot drive them to a suit for damages against Packwood, or urge that they should accept $1,020 for property (of which they hold possession) of so much greater value. We think the district court erred in sustaining the plea of estoppel or ratification; that its judgment to that effect should be set aside, without prejudice; and that the cause should be remanded to the district court for further proceedings.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court be, and the same is hereby, annulled, avoided, and reversed, without prejudice.

It is further ordered and decreed that the cause be remanded to the district court for Tangipahoa for further proceedings; costs of this appeal to be paid by the appellees.

PROVOSTY, J., takes no part, not having heard the argument.

### On Application for Rehearing.

NICHOLLS, J. In this application, defendants use the following language:

"If the court shall decline to grant a rehearing, we urge that the cause be remanded to the district court for the purpose of enabling the defendants to prove that the plaintiffs did settle with Packwood for the proceeds of the sale of this land, and that they received from him the entire amount they claimed to be due them. * * * The judgment does not state, in terms, the purpose for which the case is remanded. We therefore request the court to expressly insert in its judgment a statement that the cause is remanded for the purpose of taking testimony upon the fact of a settlement by the plaintiffs with the administrator for the proceeds of the sale attacked."

We must decline to make any change in the language of our decree. It was used advisedly. Our object was to set aside the action of the court sustaining the plea of estoppel, and to set at large, all rights

which both parties could assert in respect to the matters raised in that plea. We purposely avoided saying anything which might be taken as an instruction as to what could or should be done by the district court on the return of the case to it. Whether or not evidence shall or should be admitted under the pleadings, or under the existing condition of things, is a matter which must be raised and passed upon in and by the district court, freed from any expression of opinion by us.

The rehearing is refused.