## No. 8773.

### LAFITTE, DUFILHO & CO. VS. LEON GODCHAUX.

An invalid contract by an agent will be held as ratified by the principal, after a tacit acquiescence and a long silence.

This rule applies to a sale of stock made by a pledgee, which, though invalid in itself, is confirmed by a settlement, under such sale, subsequently made between the pledgor and the pledgee.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

J. L. Tissot and W. S. Benedict for Plaintiffs and Appellees.

146

*T. J. Semmes & Payne* and *T. Gilmore & Sons* for Defendant and Appellant:

1. A sale of stock made by pledgee, under the power given in the act of pledge, though invalid in itself, is confirmed by a settlement of the balance resulting from the sale, made between the pledgor and pledgee. 16 La. 51; 18 La. 517.

2. Where the pledgor, at the time of settlement, has the means of knowledge respecting the manner of making the sale, the possession of such means is equivalent to knowledge. 1 Dillon, 85; 11 Wall. 107; 101 U. S. 141.

3. The settlement or compromise is a bar to an action to attack such sale, until the compromise is rescinded by direct action for error or fraud. 105 U. S. 605; 16 An. 543.

The opinion of the Court was delivered by

POCHÉ, J. The following facts have given rise to this litigation:

On the 29th of June, 1873, the plaintiffs pledged to the defendant 235 shares of the capital stock of the New Orleans Insurance Company to secure the payment of their note of $9,000, dated June 29, 1873, and maturing one year after date, with interest of eight per cent. after maturity. By the act of pledge the right was given to the creditor to sell the pledged securities either at public or private sale, without judicial intervention, in case of non-payment of the note at maturity. After protesting the note, the defendant placed the stock in the hands of a broker for sale, and a few days thereafter he notified plaintiffs that the stock had been sold for $32.25 a share, realizing an aggregate of $7,578.75 to the credit of their note, and leaving a balance yet due him thereon of $1,449.25.

The par value of the stock was $50 a share. After several demands for the settlement of his balance, the defendant agreed to accept in full of the same, $1,014.47, one-half cash, and the balance in a note maturing February 23d, 1877, which was paid at maturity. This settlement took place on the 20th of November, 1875.

This suit was instituted on the 6th of May, 1882, and has for object the recovery of the 235 shares of stock originally pledged to defendant, on the ground that the said stock had not been sold on the 3d of July, 1874, as the defendant pretended, but that he had detained them, the pretended sale having been made to a person interposed, who had immediately returned the stock to the defendant. The suit was preceded by a tender of the amount of plaintiffs' note, originally held by defendant, with interest to date of the tender, less the amount of $1,014.47 previously paid to the defendant, as stated above.

The District Judge gave judgment in favor of plaintiffs, condemning the defendant to pay to them the difference between the amount of the note in capital and interest, and the amount realized by defendant on sales of the stock, which he afterwards had made of the same, and of

the dividends which he had received thereon, with legal interest on both, allowing to plaintiffs, as credit on their note, the sum of $1,449.25, amount claimed by defendant, as balance due on the note on July 3d, 1874, for which he had subsequently accepted $1,014.47. The judgment amounts in figures to $3,577.23, and defendant now seeks its reversal. Under the views which we have taken of the case, we concede that the party to whom the stock was sold on the 3d of July, 1874, was a person interposed who at once returned the shares to defendant, and was by him reimbursed the amount stipulated as the purchase price; that this step was taken to fix some price on stock, which is shown to have had no market value at the time, on account of the financial crisis which struck this country in the year 1873.

In other words, we shall treat that sale as not valid in law.

But, on the other hand, it is true that its nullity affected the plaintiffs only, and that its validity depended on their will alone.

One of the plaintiffs who was at the time and has been for sixteen years a director in the Insurance Company in question, and who therefore had every opportunity to know in whose name the stock stood on the books of the Company, and that no transfer of the same had been made to the ostensible purchaser of July 3d, 1874, testifies that he always believed and felt certain that there had been no genuine sale of the stock at the time; that there was then no market for the same, and that the defendant had continued to hold the said shares.

And yet, while under that belief, he accepts the return of the sale made to him by the defendant, and acknowledges an indebtedness to him, as a balance due after such sale, in the sum of $1,449.25, in settlement of which his firm agrees to pay and does pay the sum of $1,014,47.

In law, as well as in equity and justice, such conduct cannot escape the construction of a full ratification of the sale reported by their creditor, as made by him, under the authority of the pledge.

In such a transaction the relation of the pledgee to the pledgor is precisely that of an agent to his principal, and the validity of his acts must be tested under the same rules.

Those rules are well known and firmly established in our jurisprudence, and they hold the acquiesence or long silence of the principal touching an unauthorized or illegal act of his agent as a ratification of the act or contract of the agent.

The genius of our law does not favor the claims of those who have long slept on their rights, and who, after years of inertia, conveying an assurance of acquiesence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid

of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement.

In the case of Bennett vs. Mechanics' and Traders' Bank, 34 An. 150, we had occasion to discuss this principle and to take an extended review of our jurisprudence on this question, and we therein enforced this rule as a bar to recovery on a similarly stale demand. Among the numerous authorities which we had occasion to examine, we find two decisions of our Court which are quite in point in this case. Dupré vs. Splane, 16 La. 51 ; Starr vs. Zacharie, 18 La. 517.

We are very clear and positive in our belief, that if the stock in question had not greatly increased in value, since the date of the transactions which plaintiffs now seek to disturb and annul, this suit would never have found its way to the temple of justice, and that a demand, based on the subsequent depreciation of the same, would have been strenuously resisted by plaintiffs.

The impression made on our minds by the evidence, as well as all the equities in this case, compels us to differ with our learned brother of the District Court.

The judgment appealed from is, therefore, annulled, avoided and reversed, and it is ordered that plaintiffs' demand be rejected and their action dismissed at their costs in both Courts.

Rehearing refused.