No. 9389.

:SUCCESSION OF JOSIAH STANBROUGH, ON OPPOSITION TO FINAL ACCOUNT.

AND

J. M. STANBROUGH FOR USE, ETC., VS. S. B. AND J. T. McCLELLAN

ET ALS.

( Consolidated. )

| 37 | 275 |
|----|-----|
| 49 | 1481 |
| 37 | 275 |
| 52 | 1343 |
| 37 | 275 |
| 104 | 119 |
| 37 | 275 |
| 114 | 211 |

:Succession representatives and tutors who are not surviving partners in community or ordinary partnership, or legatees, or heirs, are absolutely prohibited from purchasing any property entrusted to their administration. The fact that they are mortgage creditors does not form an exception in their favor. The prohibition which derives from the Roman law extends to all purchases, whether the sale was provoked by the succession representative, or by a creditor, whether in, or out of, the *mortuaria* proceedings. Under the express letter of the prohibitory laws, the purchases are reprobated and are absolute nullities, whether made directly or by means of a third or interposed person, whether for good or improper motives.

APPEAL from the Eighth District Court Parish of Madison.
     *Hough*, J.

*A. L. Slack* for J. M. Stanbrough, Plaintiff and Appellant.

*A. Nye Spencer* for T. B. Adams, Defendant and Appellees.

*J. Tyson Lane* and *John B. Stone* for the Executors and Appellees.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The main question presented for solution, both by the opposition to the account and by the direct suit, which are consolidated, involves the validity of the adjudication made of succession property under executory process by a mortgage creditor, to one who is charged as being a person interposed, and acquiring for account of the executors.

The opposition and the direct suit together seek to fasten a liability on the executors for rents and revenues of the place since the adjudication.

The following are the facts disclosed by the record:

Mrs. Josiah Stanbrough, who owned the property in question, died in February, 1880, leaving a will by which she bequeathed it to her husband, encumbered with two mortgage claims. The first in rank for $2400 was in favor of T. L. Maxwell, the next one for $1063, in favor of S. B. and J. T. McClellan.

Josiah Stanbrough died in December following leaving a will by which he bequeathed the property to his nephew, a minor, subject to a usufruct which, soon after, determined by the death of the usufructuary.

He appointed as his executors, S. B. and J. T. McClellan, the second mortgage creditors.

The wills were produced in court and ordered to be executed. The executors qualified and had an inventory taken, in which the property was described and appraised as belonging to the deceased.

Maxwell, remaining unpaid, caused the property to be seized and offered for sale. It was adjudicated to Thos. B. Adams for $3450 cash, which were paid.

The executors then filed an account in which they stated the assets and liabilities of the estate, charging their commission on the amount of the inventory. The amount of sale of the property figured among the assets, but the amount due the executors as second mortgage creditors, does not appear among the liabilities. The account exhibits a *deficit* in favor of the executors.

The account was opposed by James M. Stanbrough, for the use of his minor son, Jesse, who is the nephew and legatee of Josiah Stanbrough. Subsequently, he brought a direct action against S. B. and J. T. McClellan and Thos. B. Adams.

Both the opposition and the direct suit charge, that the adjudication of the property, under the executory proceedings of Maxwell, was made to Adams for account of the McClellans, who, as executors, could not legally purchase.

The defense is, that the adjudication to Adams, was *bona fide* and that he acquired title for his own account, and in no way, for that of the executors.

From an adverse judgment, the opponent and plaintiff has appealed.

We do not propose to enter into any discussion to justify our conclusion as to the facts elicited on the trial, which we believe to be well founded.

It is satisfactorily shown, that the executors were mortgage creditors, second in rank; that the property mortgaged to secure their claim was inventoried, and passed into their possession as executors; that they charged their commission on the appraisement of it in the inventory; that they were anxious to protect themselves, as such creditors and to that end, determined upon buying the property; that ascertaining they could not legally do so, and not having in readiness the cash required to bid in the property, which was to have brought enough to cover the first mortgage creditor—they made arrangements to borrow the amount in the shape of an advance to them by Frankenbush & Borland, title to the property to be put in the name of Thos. B. Adams, their nephew and employee; who, at some future time would transfer it to them; that the amount was advanced and charged to the executors, and the reimbursement thereof secured by Adams on the property, the latter assuming, *besides*, to make good to the executors the amount of their claim, as second mortgage creditors; that Adams had not the means to buy and has not paid the price of adjudi·tion, or the amount secured by him, by mortgage on the property.

It is also established, that the plantation was rented and yielded revenues. We deem it unnecessary presently to state specifically what the varying evidence, on that subject, may be considered to have proved.

It is manifest to our minds that the adjudication was made to Adams, for account of the executors, as charged in the proceedings.

It is clear that, had the executors been surviving partners in community or ordinary partnership, or heirs or legatees of the deceased, the purchase so made could be considered as valid and binding as though made by any disinterested third party.

But the fact is that they occupied neither of these positions, and were simply creditors of the deceased.

The law, as found in the Code of 1825, as next amended, and as now incorporated in Art. R. C. C. 1146 and 1790, prohibits all succession representatives and tutors from purchasing by themselves, or by means of a third person, any property, movable or immovable, intrusted to their administrators, under pain of nullity and of responsibility in damages. The prohibition extends to all sales, whether the same be provoked by the succession representatives, or procured by a creditor whether in or out of the *mortuaria* proceedings.

Executors who are creditors cannot be recognized the right of purchasing such property, without assuming to add to the law a circum-

stance justifying such purchase, which it never entered the mind of the law-giver to incorporate into it.

It cannot be claimed, that in the case presented, the property was not entrusted to their administration; that the sheriff and not they had possession of it.

The law does not discriminate and we are powerless to do so. Besides, the property was under their control and in their custody.

They had it inventoried and they were empowered by the will, to take *immediate* possession of it. They charged a commission on its appraisement, because they had the seisin of it.

The prohibition to purchase is a rule of almost every system of jurisprudence against persons acting in a fiduciary capacity. The same person cannot be buyer and seller. The law will not permit such agents to occupy a position in which the presumption is they would sacrifice the interests of others to their own. What they are forbidden from doing directly themselves, they are not allowed to do through third persons.

In the elaborate and highly instructive opinion of the U. S. Supreme Court in Michaud vs. Girod, 4 How. 503, the philosophy and wisdom of the rule, considered in a Louisiana case, are admirably expounded.

The rule derives from the Roman law and comes down to us through the French and Spanish law. *Tutor rem pupilli emere non potest; idemque porrigendum est ad similia, i. e. ad curatores, procuratores et qui negotia aliena gerunt.* Dig. L., 18 t., 1 l. 34 (7); Inst. L. 1, t. 21, 23; C. N., 159, 6; Siete Partidas, title V. l. 4.

It is also well founded in the common law of England and of the United States.

The prohibition has been uniformly and rigorously enforced by this Court in a number of cases in which such purchases were reprobated and set at nought. 15 L. 397; 6 L. 782; 2 Ann. 782; 15 Ann. 581, 641; 16 Ann. 135; 21 Ann. 38; 24 Ann. 482; 27 Ann. 241, 491; 33 Ann. 746; 35 Ann. 919.

Permitting executors, whether creditors or not, to purchase property entrusted to them, unless in the exceptional instances specified by law, would be to arrogate to ourselves the right of judicial legislation and to open a wide door for evil temptations and the perpetration of injurious frauds. It would be an abuse deserving severe condemnation.

It is not proved, and we have no reason to assume that the executors acted through improper motives; but intention or design, however

otherwise irreprehensible, is immaterial. It is the fact of the purchase which must be ascertained and made as though it never was. The law-giver solemnly forbids discrimination.

" When, to prevent fraud, or from any motives of public good, the law declares certain acts void, its provisions are not to be dispensed with, on the ground that the particular act in question has been proved not to be fraudulent, or not to be contrary to public good. R. C. C. 19 ; 36 Ann. 788.

Applying these principles to the case under consideration, we conclude :

The two items : of the proceeds of the sale, and of the difference between the adjudication and the appraisement of the property in the inventory must be stricken from the account.

The executors must be held responsible for the rents and revenues of the plantation from the date of the adjudication, to the day of the the sale of the same, in due course of administration.

We do not consider that, under the anomalous pleadings, the evidence on the trial and the contingencies which may have since occured or may arise, we can, in justice to the parties, now state with precision, the extent of that liability for rent and revenues. We merely declare it.

Neither can we pass upon the other different grounds of the opposition and of the petition.

We deem that, in order to subserve better the ends of justice, it is much preferable to reject *in toto* the account presented, without prejudice to the right of the executors, on the one hand, and of the opponent on the other, the former to render another account *final* in character, in which they will restate the assets, including the rents and revenues and the liabilities of the succession, embracing whatever just claims they and others may have against the estate ; and the latter (opponent) the right of opposing the account to be thus rendered, either to increase the stated assets or decrease the items of indebtedness or liabilities, or both, or otherwise—and to *non suit* the plaintiff in the direct action, except as regards the prayer for the nullity of the adjudication to Adams.

On the whole, we reach the conclusions that the opposition to the acr count should be sustained, so as to reject the same, and that the praye of the petition should be allowed, so that the adjudication attacked be annulled and the property recovered, and in other respects the plaintiff be *non suited.*

We will proceed to decree in consonance.

It is therefore ordered and decreed, that the judgment appealed from be reversed and annulled, and be replaced by the following judgment.

It is ordered and decreed, that the opposition to the account be sustained, so as to reject the said account, subject to the reserve of rights hereinabove made in favor of the executors and of the opponent.

It is further ordered and decreed, that the adjudication of the "Joan" plantation, described in the proceedings, to Thos. B. Adams, on the 15th of April, 1882, for thirty-four hundred and fifty dollars, ($3450) by the sheriff, be declared to be an absolute nullity, and not to have transferred any title of ownership to said Adams; that said plantation be declared not to have ceased to belong to the succession of Josiah Stanbrough, and that the same remain to be therein disposed of according to law; that, after the sale of said property, the executors do render a final account in accordance with the views hereinabove expressed, under the reserve in their favor and in that of the opponent; that the plaintiff in the direct suit be non suited as to claims other than that for the nullity of the adjudication aforesaid.

It is finally ordered and decreed, that said S. B. and J. T. McLellan pay the costs of the account and opposition in both courts, and that they, the said executors, with the said Adams, pay the costs in the direct suit, below and on appeal.

Rehearing refused.