The opinion of the court was delivered by
Blanchard, J.
This case is before the court for the second time.. The first time it was here on appeal by plaintiffs from a judgment, sustaining an exception filed by defendant, and dismissing the suit.. For reaso'ns assigned in 48 An. 302, this court reversed that judgment, ordered the reinstatement of the case, and that it be proceeded with according to law.
It is now on appeal by defendant from a judgment in favor of plaintiffs, decreeing the nullity of defendant’s purchase of certain, immovable property, and also on appeal by the warrantors from a *1479 judgment condemning them to restore to defendant the purchase price of the property in question.
The plaintiffs are the children and heirs of Mrs. Louisa Aronstein, who died intestate, in the parish of West Feliciana, in 1878. She was separate in property from her husband, and at her death left a small estate of real and personal property. Her children were all minors, and her husband, Julius Aronstein, qualified as natural tutor. While his name was Julius, he.had, according to his own testimony, many years before “Americanized''’ it by calling himself Joseph, by which name he was known in the community.
The dead woman owed debts. No administrator, however, was appointed; the tutor administered the succession. An inventory was taken. It showed four hundred acres of land, known as the Neville plantation, valued at one thousand dollars, and personal property of the value of eight hundred and thirty dollars. Defendant John F. Irvine was appointed and qualified as under- tutor.
In course of administration, the tutor obtained an order to sell the property to pay the debts of the succession. The movables brought seven hundred and thirty dollars. The Neville plantation not selling at first offering, was readvertised, and sold on twelve months’ credit, for five hundred and one dollars.
Following the sale a year later, the tutor filed a final account and tableau of final distribution.
The proceeds of the movable property were applied to the partial payment of privileged claims, including three hundred and fifty-six dollars and ten cents which was retained by the tutor in his hands as a homestead fund for the minors.
The proceeds of the sale of the plantation were applied to the payment in part of a note held by the Metropolitan Bank of New Orleans, secured by vendor’s privilege and special mortgage on the property.
This bank and one other creditor filed oppositions to the account and tableau, contesting mainly the homestead allowance of the minors.
These oppositions were denied and the account and tableau homol - ogated. This was in December, 1880.
Nothing further has ever been done in the succession.
In 1895, certain of the heirs of Mrs. Aronstein having become of age, and others emancipated by marriage, joined in this suit, to *1480 which also the three youngest minor children, alike forced heirs with plaintiffs, were made parties plaintiff, through the appointment of a special tutor. The father and tutor, Julius Aronstein, was still liv-* ing, but the appointment of the tutor ad hoc was deemed necessary because of alleged antagonistic interest on the part of the father in the outcome of the suit.
* When the Neville plantation was sold at succession sale in 1879 to pay debts, the purchaser thereof was Julius Aronstein, the tutor and administrator. He bought in his individual capacity. He was not surviving partner in community. His purchase was in contravention of a prohibitory law, and is attacked in this suit by the heirs of the wife as an absolute nullity. So, too, are all subsequent transfers of the property, and especially the one under which defendant, who was and is under-tutor, claims.
Defendant’s title to what is called the Wederstrandt property is also attacked. This is a piece of ground some two acres in extent, with a dwelling, gin house and other improvements thereon. It belonged to Mrs. Aronstein, but while she was still living was sold at tax sale and adjudicated to H. & O. Newman, whose purchase was subsequently, under the then existing law, confirmed by the Auditor of Public Accounts. This property, some time after the Newman purchase at tax sale, and long subsequent to the death of the wife, was transferred by Newman to defendant, who, in 1886, sold it to Julius Aronstein. The latter failed to pay the purchase price, and in 1891, under foreclosure of the mortgage which had been retained, defendant reacquired the title.
The prayer of the petitioners is that both pieces of property be decreed to belong to them as heirs of their deceased mother, and for judgment for the fruits and revenues thereof.
The judgment of the court a qua sustained plaintiffs’ demand as to the Neville plantation, but rejected it as to the Wederstrandt property. Plaintiffs’ claim for rents and revenues on the Neville place was held compensated by defendant’s claim for improvements and betterments placed thereon, and for taxes paid.
Defendant was awarded a judgment against J. Freyhan & Oo. for eight hundred and ninety-five dollars with five per cent, per annum interest from January 14, 1885, on his call in warranty against them as his vendors.
*1481 I.
We will first dispose of plaintiffs’ contention as to the Weder-strandt place.
Their claim to this property can not be sustained. Their mother owned it; it was assessed to her for taxes; and she defaulted on the taxes due for the year 1875.
With due formality it was offered at tax sale and purchased by H. & C. Newman. A tax deed was. made to them and confirmed by the Auditor.. All this was before the death of Mrs. Aronstein.
The fact that after Newman’s purchase the tax debtor was permitted to remain on the property is, at the worst, but a suspicious circumstance, not sufficiently supported otherwise, to affect the verity of the transaction. She doubtless held for Newman under an arrangement satisfactory to both. The same is true of the possession of this property by the husband after the death of the wife. He does not pretend to have held it for himself, and he never did deny or contest Newman’s ownership. When the wife died this property was not inventoried as belonging to her succession.
Subsequently, Newman sold to defendant, and the following year defendant sold it to J. Aronstein, who never did pay for it and who lost it under foreclosure of mortgage, his vendor buying it back. While there are some circumstances connected with this property, disclosed by the record, that give color to the claim of the heirs that it should have been regarded as the property of their mother and redeemed from the tax sale for account of her succession, the same can not be held strong enough to overthrow the tax title and subsequent transfers.
II.
As to the Neville plantation the situation for defendant is more grave and serious. He, the under-tutor, is found in possession as proprietor of the only piece of real property owned by the dead woman’s succession.
And it comes down to him through transfers from the husband and tutor, who, without interest as partner in community, purchased at succession sale of the wife, provoked by him in his capacity as tutor administering the succession. This purchase by the tutor was in direcD violation of the prohibition contained in C. C. 1146 and 1790 and must be held absolutely null and void. Heirs of Wood vs. Nicholls, 33 An. 746; Succession of Stanbrough, 37 An. 275.
*1482 It was a transaction flagrantly offensive as contravening positive law. Indeed, it was an active violation of a law made to regulate the tutor’s conduct in a fiduciary capacity.
His pretended purchase at the wife’s succession sale was no purchase at all. It is manifest there was never any contract of sale, and the tutor never acquired any title. There was no price paid, for there was no sale. The- title of the tutorship was never divested. The property never has ceased to be that of the dead wife. Heirs of Wood vs. Nicholls, 33 An. 750.
It was not a sale merely voidable; it was void ab initio. It never existed.
The money that was paid to the Metropolitan Bank, as the pretended proceeds of this sale, can be viewed in no other light than as money paid by the tutor for the benefit of his wards, and for which an equitable claim exists in favor of the tutor, which, in a case like the present one, may be held to inure to the benefit of parties who may have dealt with the tutor in his individual capacity in reference to the property.
If this be so, if the title has never passed out of the tutorship, the heirs have an interest in pursuing it wherever found, and it is no barrier to this pursuit to say that the wife’s succession is insolvent. Aronstein vs. Irvine, 48 An. 304.
Whether it be insolvent or not is a matter that does nob concern this defendant, who is in possession of property of the tutorship without title or warrant of law, and whose status is little better than that of trespasser.
So far as the major and emancipated heirs are concerned, the suit is an unconditional acceptance of the succession. Heirs of Burney vs. Ludeling, 41 An. 632.
But this is not the place to anticipate questions that may possibly arise between chem and the creditors. It will be time enough to do this when these questions arise, if they ever do, and full reservation in this regard is made.
No part of the pretended proceeds of the sale of this property was reserved by the tutor on account of the minors’ “ homestead fund ” as the same appears on the account filed in the tutorship, and it is difficult to see how the assertion at the time of this homestead claim by the tutor on behalf of the minors can now estop them from showing that this piece of real property has never been disposed of, and *1483 that title to same is still in the tutorship, which has never been, closed, and in the heirs.
The year after Aronstein, father and tutor, purchased or pretended to purchase the Neville plantation, at the succession sale of his wife, he made a vente ó. réméré of the property to J. Freyhan & Co. for one thousand dollars. This act was really a pledge as security for advances made and to be made to the vendor. Aronstein remained in possession. He paid back no part of the one thousand dollars, but instead received further advances of eight hundred dollars from Freyhan & Oo., and in consideration thereof the following year executed another act in which he renounced his right of redemption and consented that the title of Freyhan & Co. to the plantation be considered absolute. But still the pretended vendor remained in possession, paid no rent, and was permitted to use the revenues of the place toward settlement of his indebtedness to his vendees, represented by the purchase price of the sale.
This condition of affairs continued down to the beginning of the year 1885, when Freyhan & Co. conveyed their interest in the property to defendant for eight hundred and ninety-five dollars, without warranty.
It is shown that this eight hundred and ninety-five do lars was the balance due Freyhan & Co. by Aronstein. In other words, he had ■ returned to them all of the eighteen hundred dollars which figured as the price of their purchase of the property, except this eight hundred and ninety-five dollars.
Irvine paid this, not in cash, as alleged in the deed, but later met his notes given for same, and became the nominal owner of the plantation.
But Aronstein remained in possession still. He had become largely otherwise indebted to Irvine, and the conclusion is irresistible that the latter paid the remaining claim of Freyhan & Oo. on the property and took title, the better to secure his claim against Aronstein if not for the sole purpose of protecting it. Something over a year after Irvine had thus acquired title to the Neville place from Freyhan & Oo. he executed an act of sale of it to Aronstein for five thousand dollars, all on a credit, in notes with mortgage retained. The evidence shows that this price was arrived at by calculating the amount which Aronstein owed Irvine at that moment.
The latter appears to have paid nothing on the notes representing *1484 this purchase price and in 1891 the mortgage was foreclosed, and at the sale defendant became the purchaser of the plantation for two thousand two hundred and fifty dollars. Then, for the first time, he tookact ual possession, and from that time, March, 1891, until now lias enjoyed the revenues of the place.
In the act of sale from Freyhan & Co. to defendant of this property, January 14, 1885, it is stated that the property sold (after describing it) is the same transferred by J. Aronstein to the vendors on April 28, 1880. And, looking at this latter transfer, we find it there stated that the property sold is that acquired by J. Aronstein at the succession sale of his deceased wife.
None of these transfers can be regarded as otherwise than absolute nullities. Meyer vs. Farmer, 36 An. 788; Chaffe vs. Meyer, 34 An. 1031. Freyhan & Co. must be held as charged with full knowledge that Aronstein had no title when they bought from him, even if we consider that transaction a sale, for the reason that not only does the act of sale itself show the origin of their vendor’s pretended title, but Morris Wolfe, one of the partners, was one of the appraisers appointed in Louisa Aronstein’s succession, and, as such, officially participated in appraising the Neville plantation as the separate property of the wife, and as such listed on the inventory of her succession.
A fortiori must the defendant be held as knowing absolutely the want of title in both J. Aronstein and Freyhan & Co. Not only did the recitals of the sale from his vendors, Freyhan & Co., give him notice that they derived title from Aronstein and sold to him without warranty, but he (defendant), as under-tutor, was bound to know that this property was the separate property of the wife’s estate, and that the tutor of the wife’s minor heirs was forbidden by law to purchase it at succession or tutorship sale.
It follows that whatever possession Freyhan & Co. had of this property was in bad faith, and that at no time has defendant, Irvine, ever had the shadow of a claim to be considered a possessor in good faith. C. C. 3452; Chaffe vs. Farmer, 34 An. 1020. Both must be held to be buyers aware, at the time of their respective purchase, of the danger of eviction, and, -thus, to have purchased at their peril and risk.
As a consequence, neither can claim restitution of the price of these sales. C. C. 2505; Railroad Company vs. Jourdain’s Heirs, 34 An. 648; Meyer vs. Farmer, 36 An. 789.
*1485 Defendant, being in the sense of the law a possessor in bad faith, is bound to restore the fruits and revenues of the property, dating from the time of his possession, which, in this ease, was the beginning of the year 1891. Heirs of Wood vs. Nicholls, 33 An. 750.
Though a possessor in bad faith, he is entitled to have reimbursed to him all he necessarily expended for the preservation of the property. C. C. 2314.
As to constructions and works of improvement made upon the plantation by defendant with his own materials, the restored owner, keeping the same, must pay defendant the actual present value of the materials and workmanship. Heirs of Wood vs. Nicholls, 33 An. 745; C. C. 508.
The judgment appealed from compensates plaintiffs’ claim for rents and revenues against defendant’s claim for improvements and bet-terments and for taxes paid, and we think this does substantial justice between the parties.
It was urged in defence that the father and mother of plaintiffs were not separate .in property. The record of a suit for separation of property and for judgment in the wife’s favor for paraphernal funds which passed into the husband’s hands is found in the record. This suit was filed in 1868, and there was judgment in favor of the wife on her demands, on which judgment a writ of fi. fa. issued, etc.
It is also urged as defence that Joseph Aronstein, father and tutor, was not the person who purchased the real property at the wife’s succession sale.
The sheriff who sold the property as auctioneer, executed deed to J. Aronstein, and the evidence establishes conclusively that J. Aron-stein was Julius Aronstein, alias Joseph Aronstein, the father and tutor. It was this same father and tutor who, after his purchase at the tutorship or succession sale, sold the property to J. Freyhan & Co., who, in turn, later, sold to defendant. There has been in the parish another person by the name of Julius Aronstein, a nephew of the father of plaintiffs, who became demented, was interdicted and sent back to Europe. The testimony negatives any idea that he was the purchaser at the succession sale of the wife, and the identity of Julius Aronstein as the father and tutor of plaintiffs, and also as the Joseph Aronstein, who appears as vendee in a sale from defendant, is sufficiently established.
Under the view of the case hereinbefore announced, it is clear that *1486 the prescriptions of three, four, five and ten years, invoked by defendant, have no applicability.
It would not be equitable to allow plaintiffs to recover the property of their ancestor without making restitution of their proportionate share of whatever sum of money may have been actually realized from its pretended sale and applied to the payment of the debts of the deceased. It was so held in Heirs of Burney vs. Ludeling, 41 An. 632.
Plaintiffs recognize this, as shown by the following excerpt taken from the brief filed on their behalf:
“ In this case Aronstein paid money for the benefit of these heirs, which freed their property from a vendor’s privilege, and he should be reimbursed. If the suit were against him, he would no doubt reconvene for the amount. Defendant has not done so. We are willing that he, as the last transferee of this property, should have the benefit of this payment, and have returned to him an amount of money equal to that paid the Metropolitan Bank, without interest. * * * * We will not urge that defendant shquld look for relief to his true warrantor, Aronstein, as we might. We will not insist that this case does not come within the doctrine of Daquin vs. Coiron, 6 M. N. S. 684, where it was said that the several vendors having been cited in warranty, the case stood as if the suit had been brought against the first purchaser, and the heirs should repay the money which had been applied for their benefit.”
Accordingly, we will, in our decree, apply the principles of equity referred to, and give effect to the willingness expressed by plaintiffs in this regard. •
It is therefore ordered and decreed that the judgment appealed from, in so far as it decrees recovery by defendant of the sum of eight hundred and ninety-five dollars, with five per cent, interest from January 14, 1885, and costs, against J. Preyhan & Go., on the call in warranty, be annulled, avoided and reversed, and that the demand of the defendant on this call in warranty be rejected at his costs.
It is further ordered and decreed that in other respects the judgment appealed from be amended by permitting the defendant to hold possession of the Neville plantation until the plaintiffs herein and the minors represented by Robert Montgomery, tutor ad hoc, pay over to him, without interest, a sum of money equal to their propor *1487 tionate share of the amount, say, the sum of five hundred and one dollars, applied in the succession of Mrs. Louisa Aronstein to payment on the note secured by special mortgage and vendor’s privilege on said plantation held by the Metropolitan Bank of New Orleans, as shown by the account and tableau of distribution filed in said succession, and that as thus amended the said judgment be and is hereby affirmed, costs of appeal to be borne by defendant.
Nicholls, O. J., absent; ill.