Widow and Heirs of Willis vs. Berry et al.

No. 13,189.

WIDOW AND HEIRS OF J. W. WILLIS, DECEASED, VS. CHARLES L. BERRY,
ET AL.

SYLLABUS.

1. Where an understanding exists that an administrator of a Succession is, in his individual capacity, to share in the profits of a purchase of property belonging to the Succession made by two other persons, who are co-owners with him in a judgment against the Succession, it is a sale in which the person who is administrator is interested, and void as being contrary to a prohibitory law.

2. This is so even if afterwards the understanding that the administrator is to share in the profits be abandoned, and in point of fact he does not share in the same.

ON REHEARING.

The court, thinking it not possible to pronounce satisfactorily and definitely on the cause in the present state of the case and that in the interest of justice, the case should be remanded, remands the case to the lower court in order that certain evidence be admitted. The evidence already admitted is to remain as now filed, other evidence is to be admitted, and judgment rendered.

A PPEAL from the Fourth Judicial District, Parish of Caldwell—
Machen, J.

J. W. Willis, for Plaintiff, Appellant.

Andrew Augustus Gunby, C. L. Berry and H. P. Wells, for Defendants, Appellees.

William S. Benedict, as amicus curiae.

On the rehearing by BREAUX, J.

The opinion of the court was delivered by

BLANCHARD, J.   John W. Willis died in January, 1882.   At the time of his death he was indebted to Allen, Nugent & Co., commission merchants and cotton factors of New Orleans.   This firm was composed of Thomas H. Allen, Perry Nugent and John B. Lallande.

Their claim against Willis had been sued on and gone to judgment prior to the death of the latter.

John B. Lallande applied to be appointed administrator of the succession of their debtor. He was appointed and qualified as such.

From his appointment in 1882 down to the present time, a period of seventeen years, he has filed but one account of his administration. This was a provisional account filed in 1886. The succession remains unsettled and no one knows how the administrator stands towards it, its creditors and heirs, in respect of the trust relation which he assumed.

The law contemplates that due diligence should be used in the settlement of the estates of dead men and that those charged with such settlement should from time to time render accounts of their stewardship. Succession of Francez, 49 La. Ann. 1739. If necessity exists for keeping successions open and prolonging their final settlement beyond the time that ordinarily might be considered reasonable, the same should be made to appear by the accounts, statements and exhibits which it is the duty of the administrator to make to the court which appointed him.

It seems that at the time of the death of Willis but a small amount in value of real property appeared upon the conveyance records in his name; that a considerable quantity of such property, really his, was held by other parties under simulated titles; and that it became necessary for the administrator to institute suits to recover this property and bring the same under administration. These suits took time. So there was, in the beginning of this administration, some cause for prolonging the settlement of the succession. But we find that the suits to recover the property thus held away from the succession under similated titles, terminated favorably to the administrator about the years 1887 and 1888, more than ten years ago. Still the succession remains unsettled, though most, if not all, of its property has long since been sold.

Nay more, we find that about the year 1890 the administrator filed in the city of New Orleans, in his individual capacity, proceedings under the insolvent laws of the State, and a syndic to take possession of his property and effects and to administer same for the benefit of his creditors, was appointed. Following this he left the State permanently and has since resided out of it. Before leaving the State he should have filed a complete account of his gestion and resigned his trust.

C. C. 356, 1153, 1154, 1158; Yerkes vs. Brown, 10 La. Ann. 96; Scott vs. Lawson, 10 La. 547.

All these things are bitterly complained of, and justly so, by plaintiffs, the widow and heirs of the dead man, but in view of the fact that they have neglected to use with sufficient vigor the means provided by the law for compelling the performance of duty by the administrator, they are entitled to but scant judicial sympathy.

We feel constrained to say, however, that in the failure to give proper attention to the affairs of this estate, in the matter of its tardy settlement, in not seasonably and with legal frequency presenting accounts of his administration, and in other particulars disclosed by the record, this administrator is guilty of gross neglect of his duties under the law.

This much in passing to the consideration of the case as here presented.

The petition is unnecessarily lengthy. It covers seventeen pages of close, unspaced typewritten matter, equivalent to at least thirty pages of written legal cap. It contains a list of grievances and averments of fact and other matters which have a very remote, if any bearing at all, on the immediate issue here raised, and which are more properly the subject of settlement and adjustment by proceedings against the administrator within the succession record proper, rather than by independent suit.

Among the different pieces of property owned by J. W. Willis was a plantation in Franklin parish known as the "Myrtle Home" place, containing about 760 acres. This place was sold at succession sale and bid in by Thos. H. Allen and Perry Nugent. Subsequently Allen died and his widow and heirs conveyed their interest to Nugent, in whom the title now stands.

Plaintiffs, one of whom sues as widow in community, the other two as sons and unconditional heirs of Willis, deceased, bring this action to have decreed null the transfers and sales by which Nugent now holds title to the said property, and to have themselves adjudged the owners thereof.

As made up by the pleadings, defendant's counsel in their brief state the issues of the case to be:—

"First—To annul the succession sale of the 'Myrtle Home' plantation to Perry Nugent and Thomas H. Allen on the 13th day of March, 1889".

"Second—To recover damages, rents, etc., against L. C. Berry for occupation of said plantation."

"Third—To remove Lallande from the administration."

Plaintiffs took a non-suit on the question of the removal of the administrator. That issue is, therefore, eliminated.

They set up in their petition that all the debts of the succession have prescribed. With reference to this, however, nothing is asked in the prayer. But had it been the answer would be, this is not a proper proceeding in which to adjudicate the question of the existence *vel non* of indebtedness against the succession, or its heirs, who accept unconditionally. It is uncommon, if not unheard of, to bring a suit to have it decreed that a debt is prescribed.

In their brief, deduced from the averments of their petition, they set up many grounds for the nullity of the adjudication of the "Myrtle Home" place to Allen and Nugent.

Judgment below was against them and they appeal.

Their demand for the nullity of the sale is met on part of the widow and heirs of T. H. Allen, and on part of Nugent, first, with a general denial and averments that plaintiffs have no cause of action. Next, they set up that plaintiffs are equitably and legally estopped by their previous judicial admissions and proceedings from bringing this action, and they plead *res adjudicata*. They specially deny that Lallande, administrator, had any interest in the purchase of the property, and in bar of plaintiffs' action they plead the prescription of one, three and five years.

In an amended answer defendant Nugent renews the exception of estoppel to the action to annul the sale of the "Myrtle Home" place on the ground that all of plaintiffs had recognized judicially the sale of the property; that Mrs. C. S. Willis, one of the plaintiffs, through J. W. Willis, her attorney, another of plaintiffs, had so recognized it by claiming, in suit No. 1735 on the docket of the District Court of Richland Parish, the proceeds thereof; and that Mrs. Willis, having previously renounced judicially the community between herself and her deceased husband, cannot now claim anything as widow in community.

Other matters of defense and in reconvention are set up which, in the view we take of the case, it is not considered necessary to mention.

Another of defendants, C. L. Berry, filed an exception of no cause of action, and, later, when plaintiffs had taken a non-suit on the demand for the removal of the administrator, he excepted on the ground that the withdrawal of demand to destitute the administrator leaves the

succession still under administration, and, hence, the widow and heirs are without standing to sue for property while the succession is being administered.

Answering to the merits he avers the legality and validity of the succession sale under which Allen and Nugent became the owners of the property in dispute.

This defendant had been brought into the case because of the fact that after the plantation had been adjudicated to Allen and Nugent, he had, under an arrangement with their attorney, gone upon it and cultivated it several years. His idea was to buy the place and he took possession with that understanding. But when the present suit was filed he relinquished the place to Nugent. He is sued herein for rent of the place for the years he occupied it, and for damages for unlawful possession, etc.

The other defendants, including the administrator, filed no appearance and the case as to them was tried on default.

With regard to the exception of *res adjudicata,* it suffices to say we find nothing in the record warranting the same so far as the attack on the adjudication made of the "Myrtle Home" place to Allen and Nugent is concerned.

With regard to the estoppel pleaded by defendant Nugent, contained in the averment that Mrs. Willis through J. W. Willis, Jr., her son and attorney, had recognized judicially the sale of the property by claiming the proceeds thereof, it suffices to say that even if this be so as to the two plaintiffs named, it does not affect the third plaintiff, James H. Willis, who, as heir, is entitled to prosecute the suit to final judgment on its merits. Nor do we find the fact to be that Mrs. Willis claimed, in the suit pleaded as estoppel, the proceeds of the sale of the "Myrtle Home" place.

With regard to the exception that Mrs. Willis had previously renounced the community and cannot now sue as widow in community, if this be so and it is binding upon her in view of the litigation that followed and the result thereof (about which opinion is reserved), the only result would be that the residuary interest of the heirs, J. W. and J. M. Willis, in the succession of their father, would be increased, for there would be no widow *in community* to divide it with. Defendants have no real interest to urge this abandonment of the community by the widow. If she has no interest in this suit the heirs of the husband simply take her place and they are parties plaintiff.

With regard to the exception filed by defendant Berry, that the non-suit taken by plaintiffs on the demand of their petition to destitute the administrator, leaves the succession still under administration, and, this being so, the widow and heirs are without standing to sue for the property, it suffices to say that though the succession be still under administration the eventual, probable or even possible, interest the widow and heirs have or may have in the same entitles them to a standing in court to contest the validity of the tenure by which property belonging to the succession, or that had been in the succession, is held. 48 La. Ann. 302.

If they be not entitled to claim the investiture of the title in themselves, they have an interest to bring it back into the succession to be administered according to law for the benefit of those concerned. This has been held to be so even though the succession be insolvent.

Succession of Aronstein, 48 La. Ann. 302; same case, 49 La. Ann. 1478.

This brings us to the consideration of the merits.

One of the grounds alleged for the nullity of the adjudication to Allen and Nugent is that the administrator was interested in the purchase and was to share in the profits arising therefrom, contrary to a prohibitory law.

If this be so, it is familiar doctrine that the sale and purchase are void *ab initio*.

49 La. Ann. 1478, 1539; 51 La. Ann. 1053; 37 La. Ann. 275; 36 La. Ann. 786; 34 La. Ann. 1017; Harrod vs. Norris, 11 M. 300; C. C. 1146; 33 La. Ann. 748.

There is no question that the property was legally advertised for sale under a legal order of sale, and that it was bid off by E. T. Lamkin, agent, for T. H. Allen and Perry Nugent, at the sum of $3040.00, this being the last and highest bid and being two-thirds of the appraised value. It is equally true that Allen and Nugent figured alone as adjudicatees and that the title was made to them.

This sale took place on the 13th of March, 1889. Later, in May, 1891, after Lallande had made a cession of his property under the insolvent laws, Nugent wrote a letter to Eugene Soniat, the syndic of Lallande, in reply to one addressed to him by the syndic, making inquiry, presumably, touching Lallande's interest in the Willis indebtedness and property. This letter of Nugent, it seems, was filed in the

insolvent proceedings and thus made public. In this way it became accessable and was filed as evidence in the instant case.

This letter discloses that an understanding existed between Thos. H. Allen, Perry Nugent and Jno. B. Lallande that the latter was to share in the profits that might be made on the property bid in at the J. W. Willis' succession sale in the name of Allen and Nugent and that of their attorney.

As the "Myrtle Home" place was part of the property so bid in, this understanding covered it.

Of course, Lallande as one of the partners in the firm of Allen, Nugent & Co., was entitled to his share of what was realized in the way of collections on the judgment which that firm had recovered against J. W. Willis. But the "understanding" referred to was not confined to this. His right to his share of the collections on the judgment existed without any understanding. But where the judgment is used as a means of purchasing the property of the succession, as was the case here, and an understanding is had by those owning the judgment that all are to share in the profits of the purchase and one of those so to share is the administrator of the succession, the sale at which the purchase is made cannot stand. It is stricken fatally from its very inception by the terms of the prohibitory law forbidding those holding fiduciary trusts from being interested in any way in purchases made of property over which they have the administration.

It can make no difference that the names of Allen and Nugent only were used as adjudicatees.

If Lallande, the other co-owner of the judgment, who held the fiduciary trust, was in the least interested in the outcome of the investment the prohibitory law applies and the sale is null *ab initio*. A. & E. Ency. of Law, Vol. 7, p. 294. This is so even if afterwards the understanding that he was to share in the profits be abandoned and in point of fact he does not share in the same. Once the understanding existed, his interest arose and the sale is vitiated.

In Harrod vs. Norris Heirs, 11 M. 300, the court states the reason for this to be, "to prevent men from being led into temptation; that they may not be placed in a situation where their private interests and their duties to others were at variance—the law presuming that in such case the latter would be sacrificed." See also Adams Equity, Secs. 60 and 61, and authorities there cited.

TERM OF 1900-1901.                121

Widow and Heirs of Willis vs. Berry et al.

This letter in which the admission is that Lallande was to share in the profits of the purchase made at the Willis' succession sales, was that of Nugent, who, as sole owner now of the "Myrtle Home" place, the subject of this attack, is the principal defendant herein. The letter was written more than two years after the succession sale of the property. It further disclosed that, according to the writer's recollection, Lallande had told him the preceding summer he preferred not to have any interest in the profits since his doing so might not be legal.

This but confirms the pre-existing understanding that he was to share in the profits. When he told Nugent in the summer of 1890 that he would prefer not to have an interest in the profits, it was more than a year after the sale had taken place at which the property had been adjudicated to Allen and Nugent.

The witnesses, other than Nugent, who testified that Lallande was not interested in the purchase of the "Myrtle Home" place, necessarily did not know of the secret understanding between Lallande and his partners, Allen and Nugent. Nugent's testimony in the case that Lallande was without interest is contradicted by his letter to Lallande's syndic. Lallande himself did not testify in the case.

As to the purchase of the property by Allen and Nugent, former commercial partners of Lallande and co-owners with him of the judgment against Willis which was used in effecting the purchase and payment of the price, we call attention to the case of Carroll vs. Cockerham, 38th La. Ann. 822, the facts of which are quite similar to those of the instant case and the ruling in which sustains that herein.

Plaintiffs do not bring this suit for the benefit of the succession of Willis, or its creditors. They bring it for their own benefit, seek to have themselves decreed the owners of the property described in their petition and sent into possession thereof.

They ask for more than they are entitled to in this proceeding.

The nullity of the sales by which Nugent claims the "Myrtle Home" place must be decreed, but the property returns to the succession, whose title has never been divested—not to plaintiffs.

The succession is still under administration and unsettled. In these respects the instant case differs from that of the Succession of Aronstein, 51 La. Ann. 1052.

The prescriptions pleaded by defendants in bar of plaintiffs' action to annul the succession sale of the property to Nugent do not apply,

for the sale being in contravention of a prohibitory law was void *ab initio.* Title to the property never passed to the adjudicatees.

What the defendant Berry owes, if anything, for rents, etc., is not a claim to be recovered by the widow and heirs in this proceeding. It pertains to the succession and the administration thereof, whose rights are reserved.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeing, to render such judgment as should. have been rendered in the first instance, it is now adjudged and decreed that the sales by which the title to the "Myrtle Home" place is pretended to have been conveyed to Perry Nugent are null and void, and the said property is hereby decreed returned and restored to the succession of Jno. W. Willis, deceased, to be administered according to law.

It is further ordered, etc., that all other questions and issues herein raised, not passed upon, are reserved to the parties plaintiff and defendant respectively—costs of both courts to be borne by defendants.

## ON REHEARING.

BREAUX, J. It is evident that this cause is of considerable importance. We are informed that a decree annulling the sale attacked will disturb the title by which several owners have acquired part. of the property since the date of the sale attacked. In addition, the issues are such that it is important to have all the evidence obtainable before the court prior to entering a final decree.

In argument at the bar, something was said about the testimony of the administrator of the succession of J. W. Willis, and the impossibility of obtaining it at the time. This is met by the assurance that his residence is well known and that his testimony could have been had. From one of the briefs in behalf of plaintiff we quote: "It is to be regretted that Mr. Lallande, who is still living, but who is a traveling salesman, should not have been located and questioned in regard to this matter." Again: "It is equally to be regretted that the writer of these views to the court, whose name was mentioned in the interrogatories propounded by plaintiff, should not have been examined upon the subject matter".

From the defendants' brief, we quote: "If, however, the court should

remand the case, we have further evidence that Lallande now claims a part of this property." This is shown in a letter dated at Memphis, April 10th, 1895, written by Thomas H. Allen to Hon. H. P. Williams.

In view of the condition of the issues, we have concluded to remand the case. The authority to remand is manifest when a vital question of fact may be made quite clear by further testimony. C. P. 906.

It is therefore ordered, adjudged and decreed that the decree of the District Court in this case be annulled, avoided and reversed, and that our decree also heretofore handed down, be annulled, avoided and reversed, and the case is remanded to have any and all further admissible evidence admitted and for a decision thereon by the court a qua and to be appealed from if the party cast so elects.

It is further ordered that the evidence remain as already filed and that change be made, as before indicated. Appellee to pay costs of appeal, those of the lower court are to await the final decision of the court.