118 *So.2d* 446

**SUN OIL COMPANY and Humble Oil
& Refining Company**

v.

Amadeo ROGER et al.

No. 43937.

Feb. 15, 1960.

Rehearing Denied March 21, 1960.

Robert D. Morvant, Thibodaux, for defendants-appellants.

Donald L. Peltier, Harvey Peltier, Pugh, Lanier & Pugh, Deramee & Deramee, Thibodaux, Blanchard & Blanchard, Farrell A. Blanchard, Donaldsonville, for defendants-appellees.

FOURNET, Chief Justice.

The plaintiffs Sun Oil Company and Humble Oil & Refining Company, producers of minerals under leases covering certain lands in Lafourche Parish claimed by opposing groups, in order to determine the ownership of the royalties accruing from the said production,[1] provoked the

instant concursus proceeding and deposited the funds in the Registry of Court, naming as defendants the various claimants—who, because of their number, agreed to divide themselves into two groups by which they have been known throughout these proceedings, i. e. Group A and Group B; and from a judgment in favor of the former, the latter have appealed.

The land affected by the mineral leases was acquired by Eugene Guillot during his marriage to Honorine Thibodaux; of the union there were eight surviving children. Eugene Guillot died in May, 1903, and his wife died in March, 1917, both intestate. On April 4, 1917, one of the children, Estillina Guillot, and her husband, Joseph Vendome Roger, opened the successions of her father and mother and filed joint application to be appointed administrators of their successions. Following publication of notice of application, and certification that no opposition thereto had been filed, on April 17, 1917, the applicants were appointed by the District Judge joint administrators of the said successions. On the same date an inventory was made, showing movable property (a bed, chair and armoire) appraised at $5, and immovable property (the tract of land the ownership of which is in dispute) appraised at $500; and the required bond having been filed, Letters of Administration were issued. On April 23, 1917, pur-

1. The plaintiffs obtained mineral leases from the persons comprising both groups.

suant to the Administrators' petition representing that the Successions owed debts exceeding in amount the value of the movable property, an Order was signed by the Judge directing that the movable and immovable property of the Successions be sold at public auction on the premises, for cash, to pay debts; and pursuant thereto the Sheriff, after publication of legal notices, conducted the sale on the premises on June 2, 1917, and sold and adjudicated the movable and immovable property to "Estillina Guillot, wife of Joseph Vendome Roger." The validity of this sale is the main issue in this case.

The descendants of Estillina Guillot Roger and her husband, Joseph Vendome Roger, and/or their assigns, designated Group A, claim title under the above mentioned sale. The remaining seven children of Mr. and Mrs. Eugene Guillot, their heirs and assigns, designated Group B, attack the validity of the succession proceedings, contending that the sale thereunder was an absolute nullity and that

consequently the successions of Mr. and Mrs. Eugene Guillot were never divested of the property, so that all of their heirs are entitled to respective fractional interests, and urge five reasons for the asserted nullity, i. e. (a) the succession proceedings were ex parte and the forced heirs of the decedents were neither notified, cited, nor made parties, and were not called upon to pay the purported debts; (b) there was no filing of a list of debts, and therefore no way for the Court to determine the necessity for a sale to pay debts; (c) the Administrators failed to wait thirty days from their appointment and thirty days from the taking of inventory before applying for an order to sell, as required by law; (d) the sale was based on debts which were prescribed;[2] and (e) the purchase was made by the wife, Estellina Guillot Roger, for the benefit of the community while both she and her husband were joint administrators of the successions, at a time when the husband did not fall within any of the exceptions set forth in Article 1146 of the Civil Code.[3]

2. The argument here is that the only purported creditor was Joseph Vendome Roger, whose recitation that the successions were indebted to him formed the basis for the sale; yet, as to Eugene Guillot's half of the community and any indebtedness by his estate, since he had died fourteen years prior to the succession proceeding, such claim was prescribed, and an administrator is without power to waive or renounce prescription once it has run in favor of the estate which he administers.

3. Article 1146 declares that an administrator is prohibited from purchasing, either directly or through a third person, any property entrusted to his administration, unless he be "the surviving partner in the community or ordinary partnership, or an heir or legatee of the deceased or * * * mortgage creditor [of decedent's mortgaged property] or * * * when he has a claim secured by such vendor's lien [on decedent's property so encumbered] * * *."

The Trial Judge, in a very able and well considered opinion, we think properly disposed of the irregularities relied on in (a), (b), (c) and (d), holding that they were relative nullities and prescribed against, under the express provisions of Article 3543 of the Revised Civil Code.[4] See Phoenix Building & Homestead Ass'n v. Meraux, 189 La. 819, 180 So. 648; Arceneaux v. Cormier, 175 La. 941, 144 So. 722; cf. Thibodaux v. Barrow, 129 La. 395, 56 So. 339; Hibernia Bank & Trust Co. v. Whitney, 130 La. 817, 58 So. 583; Wright v. Calhoun, 151 La. 998, 92 So. 589; Milburn v. Proctor Trust Co., 5 Cir., 122 F.2d 569, certiorari denied 314 U.S. 698, 62 S.Ct. 479, 86 L.Ed. 559. It is apt to observe that there is no allegation of fraud, and after a perusal of the record we are in accord with the observation of the Trial Judge that there is no evidence of misfeasance except such as might be inferred, and his further remarks that "It seems to us that if the administrators had intended to divest Group B of their interest in the succession property by subterfuge and to that end considered attempting to perpetrate a simulation and a sham by instituting an ex parte proceeding without notice to the interested heirs, it is hardly reasonable to suppose that they would have made provision for a public auction on the premises in the very vicinity in which the alleged unnotified heirs resided. We believe that by the published advertisement, general notice was given to the world, that by the overt act of a sale on the premises, particular notice was intended to be given to friends, neighbors and relatives, and that the administrators may thereby be judged by their deeds. If any inference is to be drawn from the succession record, it is that the record evidences the intention of the administrators to reveal, rather than to conceal, their actions."

We think it appropriate at this point to quote approvingly[5] the philosophy of this Court as announced in the case of Lafitte, Dufilho & Co. v. Godchaux, 35 La. Ann. 1161: "The genius of our law does not favor the claims of those who have long slept on their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, sud-

4. That Article declares "That any and all informalities of legal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, licensed auctioneer, or other persons, authorized by an order of the courts of this State, to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were part owners at the time of making it, and in the event of such part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication thereof."

5. For another instance of approval of the same language, see Fried v. Bradley, 219 La. 59, at page 81, 52 So.2d 247, at page 255.

denly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement." 35 La. Ann. at page 1163.

This brings us to the main question presented for our determination on this appeal, i. e., whether the acquisition by "Estillina Guillot, wife of Joseph Vendome Roger," one of the children of Mr. and Mrs. Eugene Guillot, was an absolute nullity in that such acquisition was for the benefit of the community which existed between her and her husband, Joseph Vendome Roger, a co-administrator of the successions who was neither an heir, a legatee, a mortgage creditor nor holder of a vendor's lien on succession property, and therefore the sale must fall under the prohibition of Revised Civil Code Article 1146.[6] In disposing of this phase of the case adversely to Group B, the Trial Judge commented with logic and clarity: "Group B's contention raises the highly technical objection that, since Mrs. Roger's husband had been named co-administrator with his wife, her purchase as an heir, although expressly au-

thorized by C.C. 1146, became tainted with nullity. The fragile nature of the technicality is emphasized by the alternative plea to the effect that if the sale is not a whole nullity, then it is half a nullity. * * * The contention leaves the implication that, if Mr. Roger had not qualified as co-administrator with his wife, Mrs. Roger's acquisition would have been clothed with unquestioned sanctity. There can be no doubt as to Mrs. Roger's right as an heir to purchase succession property at a public sale under the provisions of C.C. 1146. We doubt the impairment of that right only because her acquisition became vested in the community by operation of law. * * * We cannot find any such legislative intent in its meaning;"[7] and held "that the mere incidental circumstance that a husband qualified with his wife as co-administrator of the succession of her parents did not in any manner divest or impair her right to purchase succession property, or taint the purchase with nullity of any character."

The cases relied on by appellants—Harrod v. Norris' Heirs, 11 Mart., O.S., 297; Willis v. Berry, 104 La. 114, 28 So. 888; Dugas v. Gilbeau, 15 La.Ann. 581; Aron-

6. Group B also pleaded in the alternative that if the title was held to be good as to the half belonging to Mr. Estillina Guillot, then title to the half of the community that belonged to the husband, Joseph Vendome Roger, was null.

7. It has been said that the reason for introducing the principle enunciated in Article 1146 of the Code is obvious, and its

wisdom manifest; that it was to prevent men from being led into temptation and so that they might not be placed in a situation where their private interests, and their duties to others were at variance—the law presuming that in such case, the latter would be sacrificed. See Harrod v. Norris' Heirs, 11 Mart.,O.S., 297, 299–300.

stein v. Irvine, 49 La.Ann. 1478, 22 So. 405; Succession of Stanbrough, 37 La.Ann. 275—from which certain language has been taken and is relied on as conclusive of the issue here and as showing that in those instances where a partner was executor the Court struck with nullity the entire sale and not merely the interest acquired by the partner, are not apposite or controlling under the facts of this case and need not be separately discussed. The Civil Code declares that "The community of property, created by marriage is not a partnership; it is the effect of a contract governed by rules prescribed for that purpose in this Code." (Article 2807.)

The conclusion we have reached makes it unnecessary for us to consider the suggestion made by counsel for certain of the appellees, in a plea of prescription of thirty years filed here and in answers to the appeal, that we pass on other pleas and defenses urged in the lower court and not passed on by the Trial Judge.

For the reasons assigned, the judgment appealed from is affirmed.[8]

8. One segment of Group A made three demands that were not tried and presented in the Court below, but the right was reserved to them to urge those demands at a later date; as summarized by the Trial Judge, these were (a) "that the claims of Group B, made in bad faith, constitute a slander upon the title of Group A and have damaged Group A in the sum of $25,000;" (b) "that the 'pretended claim' of Group B 'was made at the instigation of the plaintiffs' (Sun and Humble), who thereby breached their contract with Group A in making an unnecessary and unjustifiable deposit in the registry of the court, and who are liable to Group A for damages in the sum of $25,000;" and (c) "that Group A is entitled to collect 8% per annum interest from the respective due dates of the royalty payments on deposit."